## WEHNER v. BAUER.

### (Circuit Court, N. D. California. March 2, 1908.)

#### No. 13,482.

1. ACTION—EQUITY—CAUSES OF ACTION—JOINDER.

Complainant contracted to furnish the material for and install for a specified consideration a hydraulic mining plant on certain claims for defendant and P. Defendant pledged to complainant certain corporate stock belonging to defendant to secure payment of the contract price. After complainant had partially installed the plant, and had incurred a large outlay, a new contract was made, by which, in consideration of complainant's turning over to defendant the partially installed plant and all materials, etc., defendant would repay complainant with interest to the amount expended by him with reasonable compensation for his time, and that the stock previously pledged should be held by complainant as security for the performance of the second agreement. *Held,* that a bill to enforce complainant's lien on the stock under such second agreement, and to have the proceeds thereof applied to the payment of such amount as was found due complainant thereunder, was a simple suit for the foreclosure of the lien, and was therefore not objectionable as joining two distinct causes of action, one at law to recover on a simple contract debt, and the other in equity to foreclose a pledge.

2. EQUITY—JURISDICTION—LEGAL QUESTIONS.

It is no objection to the jurisdiction of equity that legal questions are presented for consideration which might also arise in a court of law, since, if the controversy is one in which a court of equity only can afford adequate relief, its jurisdiction is not affected by the character of the questions involved.

3. PLEDGES—CONTRACTS—EVIDENCE.

After part performance of a contract to construct a mining plant, for the consideration of which defendant had pledged certain corporate stock, a new contract was made, by which for complainant's surrender of the plant in its then condition with the materials defendant agreed to pay the amount of complainant's expenditures and the value of his time. In the conversation leading up to the second contract defendant stated that complainant was well secured, and he replied, "Yes; I have good security." *Held* sufficient, in the absence of evidence to the contrary, to show that the stock was also pledged for the performance of the second agreement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Pledges, § 59.]

4. CONTRACTS—CERTAINTY.

Where a contract provided that in consideration of complainant's turning over to defendant a partially installed plant and the materials, etc., defendant would pay complainant with interest the amount complainant had expended, together with reasonable compensation for his time, such

agreement was not objectionable for indefiniteness and uncertainty because the precise amount expended by complainant under the original contract could not then be ascertained, the amount being capable of being made certain by reference to the complainant's vouchers and bills.

**5.** SAME—ALLOWANCE FOR SERVICES.

Where a contract in consideration of a rescission of a former contract provided that defendants should pay complainant a reasonable compensation for his time, the contract was not objectionable for uncertainty as to the amount to be paid therefor, complainant being entitled thereunder to the reasonable value of his services.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 16.]

**6.** SAME—REDUCTION TO WRITING.

Where a contract, certain in its terms, was definitely entered into, the fact that there was a purpose in the minds of the parties to reduce it to writing, which through defendant's failure was never carried out, did not affect its enforceability.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 159.]

**7.** FRAUDS, STATUTE OF—EXECUTED CONTRACT.

The statute of frauds, making oral contracts not to be performed within a year unenforceable, has no application to a contract fully performed on one side.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Frauds, Statute of. § 337.]

**8.** CONTRACTS—JOINT CONTRACTS—RESCISSION—ILLEGALITY.

Complainant being under contract to defendant and P. jointly to install a mining plant while carrying out such contract agreed with defendant alone to terminate the same, and turn over to defendant the plant in its unfinished state and all materials, in consideration of defendant paying the amount expended by complainant and compensation for his time. At the time the contract was made, defendant held a general power of attorney from P., which was not shown to have been revoked. *Held,* that such new contract would be presumed to have been authorized by P., and was therefore not illegal as permitting one of two joint contractors to terminate the contract without the other's consent.

**9.** PRINCIPAL AND AGENT—RATIFICATION.

The subsequent ratification by a principal of the acts of his agent is as efficient in law as express antecedent authority.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, §§ 662, 663.]

**10.** DISMISSAL—MOTION.

In order to sustain a motion to dismiss before trial, defendant is bound to make a case so free from doubt that the court can say there is no reasonable ground on which it can continue to entertain the case or put defendant to his defense.

Thomas, Gerstle, Frick & Beady, for complainant.
D. M. Delmas and Carl Westerfield, for defendant.

VAN FLEET, District Judge (orally). In this case, the complainant's testimony having been taken and returned, the defendant now moves the court to dismiss the bill upon several grounds, some of which arise on the face of the bill, and others upon the alleged insufficiency of the evidence in various respects. These grounds will be noticed in the order in which they have been presented.

It is first urged by defendant that the bill undertakes to unite two separate and distinct causes of action, one at law to recover on a simple contract of debt, and one in equity to foreclose a pledge; the ob-

jection being that this is contrary to the course of proceeding and jurisdiction of this court. I am of opinion that this objection involves a misapprehension of the effect of the facts stated in the bill. So far as material, they are, in substance, that in September, 1902, the complainant entered into a contract in writing with the defendant and one Peterson to furnish the material for and install, for the consideration therein provided, a hydraulic mining plant on certain placer claims owned by defendant and Peterson in the territory of Alaska; and that to secure the plaintiff against any loss that might accrue to him by reason of carrying out his contract there was pledged to him certain corporate stock belonging to the defendant; that after complainant had proceeded under his contract, and, at a large outlay, had partly installed the plant, the contract was, in June, 1903, abrogated and abandoned, and complainant relieved and discharged of all obligation to further perform the same, and thereupon a new contract was entered into between complainant and the defendant, whereby it was agreed that, in consideration of complainant turning over to the defendant the partially installed plant with all material, supplies, machinery, and tools then on hand and en route, the latter should repay the complainant, with 6 per cent. interest, the amount thus far expended by him in carrying out the original contract, together with reasonable compensation for his time; and that as a part of such new contract it was agreed by defendant that the corporate stock theretofore pledged to complainant under the first-mentioned contract should be held by him as security for the performance of the last. It is to recover upon the last-mentioned contract and to enforce his lien upon the stock so held as security for the payments therein provided, and which it is alleged have not been made, that this suit is brought; the prayer being that the stock be sold, and the proceeds applied to the payment of such amount as may be found to be due the complainant thereunder.

To my mind these facts constitute no more than a cause of action to enforce a pledge by foreclosing a lien upon property held as security for a debt created by contract—a case falling within one of the best-recognized heads of equity jurisdiction. The fact that, incidentally and as a feature of the contract, it is essential to establish the indebtedness for which the security is held, a feature which, standing alone and independently of the pledge, would be properly cognizable in a court of law, cannot affect the right of a court of equity to entertain the bill. It is not an objection to the jurisdiction of equity that legal questions are presented for consideration which might also arise in a court of law. If the controversy be one in which a court of equity only can afford the full relief prayed for, its judisdiction is unaffected by the character of the questions involved. Holland v. Challen, 110 U. S. 24, 3 Sup. Ct. 495, 28 L. Ed. 52. Here a court of law would be quite powerless to give the relief asked as to the stock pledged; only a court of equity can do that, and this being so, and as equity does nothing piecemeal, its right to take the case for that purpose draws unto it jurisdiction to determine any question arising, legal or equitable. And the fact of the existence of such legal questions being disclosed by the allegations of the bill does not in such a case constitute a separate and distinct cause of action at law. The case is not within the principles of Scott v. Neely,

140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, mainly relied on by defendant, but is very clearly within the class of cases recognized by the court in that case as falling within the jurisdiction of a court of equity.

It is next objected that the complainant's evidence discloses no equity, because it fails to establish the fact that the stock pledged as security for the original contract was to remain as security for the performance of the present one. It is sufficient to say in this respect that, in the view I take of the evidence and what it tends to show, there is sufficient, in the absence of any countervailing proof, to enable the court to find that it was contemplated by the parties that the stock was to be so held; and that the lien thereon attached to the last-mentioned contract. It is true that there is to be found no statement in precise and definite terms that the stock was to be so held; but, in ascertaining what the parties intended, all the facts and circumstances surrounding a transaction must be taken into consideration, and what was said at the time of the negotiation of the contract in suit must necessarily be regarded in its relation to the circumstances in which the parties were then situated, and, in this view, the suggestion of Bauer to the complainant, when asking for better terms as to the time of making payment thereunder that, "You are well secured," or words to that effect, and the answer of the complainant, "Yes; I have good security," must be regarded, in view of the fact that the record is bald of any showing of other security than the stock mentioned, as having reference to that stock. This ground, therefore, in my judgment, cannot be sustained.

The next two grounds—that the contract proven is not the contract sued on, and that the contract sued on was never, as disclosed by the evidence, entered into—may be considered together, and I am satisfied that neither should be sustained. Taking the evidence for all it tends to prove, and standing as it does wholly undisputed, I think the contract as alleged was sufficiently established in its material features, and in substantial accord with the terms as set forth in the bill. Those terms were simple, and, to a common certainty, definite. It is true that the precise amount that had been expended by the complainant under the original contract could not at the time be ascertained, because his vouchers and bills were all in San Francisco, at a long distance from the mine where the negotiations were had, but the mere ascertainment of that amount in no way rendered the contract uncertain or indefinite. That is certain in law which can be made certain, and the ascertainment of the amount expended by the complainant was a mere question of detail to be determined from the vouchers and other means by which such items are usually established. As to the allowance of something to complainant for his time, that under all the circumstances must be held to have been an agreement to pay him the reasonable value of such time, which was a question to be ascertained by any proper method, and was likewise entirely susceptible of being made certain. I think, therefore, that the evidence sufficiently shows not only that there was a contract certain in its terms, but that that contract was definitely entered into; and the fact that there was a purpose in the mind of the parties to reduce it to writing, which, through the failure of the defendant, was never carried out, is a circumstance which does not necessarily affect the question either of its certainty or its validity. The rule

I think, is correctly stated in· 7 Am. & Eng. Ency. of Law (2d Ed.) 140, where it is said:

"Many cases occur where parties negotiating a contract contemplate that a formal agreement shall be drawn up and signed. The question arises, does such a contemporaneous understanding or agreement make the validity of the contract depend upon its being actually reduced to writing and signed? The rule may be stated in these words: Where the parties make the reduction of the agreement to writing, and its signature by them a condition precedent to its completion, it will not be a contract until that is done, and this is true although all the terms of the contract have been agreed upon. But where the parties have assented to all the terms of the contract, the mere reference to a future contract in writing will not negative the existence of a present contract."

The evidence, to my mind, brings the contract in suit clearly within the rule stated in the last paragraph of the quotation just made. The record discloses nothing from which it can be said that the carrying out of the contract was in the mind of either party thereto to be made to depend upon its being reduced to writing. That was more in the nature of a mere casual or tentative purpose. Nor do I think the objection well taken that the contract is void within the statute of frauds because not in writing, and one which by its terms was not to be performed within a year. The statute of frauds has no application to a contract which has been fully performed or executed by one of the parties thereto; and here the evidence shows that complainant had immediately and before the parties left the mine fully performed the contract on his part by turning over and delivering to the defendant all the machinery, stock, material, and tools in accordance with its terms. As to the sixth ground of the motion, that it appears upon the face of the bill and under the evidence that the contract sued on is based upon an illegal consideration, it is sufficient to say that I am unable to give this construction either to the pleading or to the evidence entered in support thereof. The proposition is that, complainant being under a contract to Bauer and Peterson jointly to install the plant under the original contract, the carrying out of this contract could not be waived by Bauer alone; and that, inasmuch as the contract sued on contemplated the abandonment of the entire work under the first, it was in effect a contract between Wehner and Bauer made without the presence or consent of Peterson to violate their obligation to the latter, which was a fraud upon him under· the law and tinctured the last-mentioned contract with invalidity. But whether this is so or not depends, under the authorities, upon the circumstances and the purpose of the parties in entering into the contract in question. There is evidence from which the court is justified in inferring not only that Bauer had authority to represent Peterson, but that both he and complainant acted upon that assumption, and that the contract entered into between them was believed by both to be as much in the interest of Peterson as of themselves. Bauer, at the time of the execution of the writing of 1902, held the general power of attorney of Peterson, and signed that contract in his behalf as his attorney in fact; and there is nothing to show that that power had ever been revoked,· or that Bauer did not in fact at the time of making the contract in suit retain full authority to act for Peterson in the premises. Under such circumstances, and in the absence of any evidence to the

contrary, the court is, I think, quite at liberty to assume that Bauer's authority still existed, and that there was no purpose in the mind of either the plaintiff or the defendant to in any wise ignore or impair any right that Peterson had in the premises. The principle contended for by the defendant does not therefore apply. And even if there existed at that time no express authority of Bauer, there is nothing yet appearing in the case to negative the idea of subsequent ratification by Peterson, which would be as efficient under the law as express antecedent authority. There is certainly nothing in the record to indicate any objection by Peterson to the action taken by Bauer; and in this respect I think the case is fairly within the principle of Bates v. Coronado Beach Co., 109 Cal. 160, 41 Pac. 855. In order to sustain a motion of this kind the defendant is bound to make a case so free from doubt that the court can say that there is no reasonable ground upon which it can continue to entertain the case or put the defendant to his defense. If there is any question of doubt left, the court is bound to leave the parties to their proof and final hearing. Of course, it is understood that this ruling rests solely upon the case as made by the bill and the evidence in behalf of the complainant alone. It may well be that when the defendant's evidence goes in it will put an entirely different aspect upon the case in several essential particulars. I will frankly say that there are one or two questions involved upon which my mind is not wholly at rest; but the objections made will all remain to the defendant at the final hearing, and may then be renewed in the light of all the evidence in the case, and thus enable the court to have a more complete and satisfactory understanding of the several questions as they bear upon each other, and determine upon the whole case the rights of the parties. And, of course, nothing that is here said is in any way conclusive upon the rights of the parties as they may appear in the light of all the evidence.

The motion will be denied.