CHARLES T. LEVINESS, JR., ET AL. *vs.* CONSOLIDATED GAS ELECTRIC LIGHT AND POWER COMPANY ET AL.

*Jurisdiction of Court of Equity to Decree Release of Lien on Preferred Stock—Representation in Equity of Parties Having a Common Interest—Vendor and Purchaser— Costs—Adjustment of Interest and Taxes.*

The mere circumstance that the instrument creating a lien on corporate property makes no provision for releasing it does not prevent a Court of Equity from releasing it when

it is shown to be to the advantage of the parties concerned and when precautions are taken to safeguard their rights.

To the general rule that all persons interested must be made parties to a proceeding in equity by which their rights may be affected, there is an exception in the case when the parties interested in certain property are numerous, and it is impossible to bring them all before the Court. In such case, if a sufficient number of the persons interested are brought into Court, so as to be fairly representative of the large class having common interest, the decree made will bind all of them.

Code, Art. 23, sec. 408, formerly provided that corporations having power to issue bonds secured by a mortgage should have the power to issue preferred stock, which should constitute a lien on the franchises and property of the corporation, and have priority over any subsequently created mortgage or other encumbrance. No provision was made in the statute for the release of the lien of the stock on the property of the corporation. After a corporation had issued several thousand shares of prefered stock, which were held by several hundred persons, it contracted to sell a lot of ground which it owned at the time of the issue of the stock, and which was subject to the statutory lien. The purchaser objected to the title. Upon a bill for specific performance against him and some of the preferred stockholders, to which bill the trustee under a prior mortgage of the property of the corporation was a co-plaintiff, *held,* that the lien of the preferred stockholders may be discharged as to any particular part of the corporate property under a decree of a Court of Equity passed in a proceeding in which fairly selected representatives of that class are made parties, and in which the reasonable necessity for a sale is alleged and proved after suitable provision is made for the protection of the lienors with reference to the appropriation of the proceeds.

When a suit in equity and a decree is necessary to make good the title to property sold by a corporation in order to discharge the lien on it of preferred stock, and the corporation files a bill for specific performance of the contract to buy it,

the purchaser should not be subjected to the costs of the case below or on appeal, and interest on the purchase money and taxes on the property should be adjusted as of the date of the decree in this Court.

*Decided January 13th, 1911.*

Appeal from the Circuit Court No. 2 of Baltimore City (STOCKBRIDGE, J.).

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, PATTISON and URNER, JJ.

*Joseph C. France* and *Edward M. Hammond,* for the appellants.

*W. Calvin Chesnut* (with whom were *Gans & Haman* on the brief), for the appellees.

URNER, J., delivered the opinion of the Court.

In this case the inquiry is whether property belonging to a corporation and subject to a statutory preferred stock lien can be released from that encumbrance for the purposes of sale and reinvestment, and if so, what is the proper procedure to accomplish such a result.

The suit was brought by the appellee, the Consolidated Gas Electric Light and Power Company of Baltimore for the specific performance of a contract for the sale to the appellants for $50,000 of an unimproved lot of ground upon which the principal office of the company was formerly located. This lot, with the other corporate property, was subject to the prior lien of a mortgage securing a large issue of bonds, and also to the lien of the preferred stock of the company created under section 408 of Article 23 of the Code of Public General Laws. The mortgage contains a clause enabling the company, with the consent of the trustee for the bond-

holders, to sell any part of the mortgaged property clear of the mortgage lien, the purchase money, however, to be paid to the trustee and to be held or reinvested as particularly provided. Such consent has been duly obtained for the sale in question. There is no provision for the release of the lien of the preferred stock either in the statute authorizing or the instrument directing its issue. The appellants, as purchasers of the lot mentioned, while desirous to consummate the transaction, object to the title on the ground that it may not be susceptible of conveyance to them discharged of the lien of the preferred stock.

The vendor company was formed by the consolidation of two previously existing corporations. In the certificate of consolidation provision was made for the issuance of preferred stock in two classes, the first, amounting to $700,-000.00, to be known as "Prior Lien Preferred Stock," and the second, amounting to $11,616,774.00, to be known as "Preferred Stock." To the preferred stock of each class a perpetual annual dividend of six per centum was guaranteed "out of the profits of the company." It was provided that the holders of preferred stock of both classes should have "all the incidents, rights, privileges, immunities and liabilities to which the capital stock of said corporation, or the holders thereof, may be entitled or subject," and that this stock "shall be and constitute a lien on the franchises and property of said corporation, and shall have priority over any subsequently created mortgage or other encumbrance"; but it was made "subject and subordinate" to any mortgages or other liens already existing upon the properties of the consolidating companies. The prior lien preferred stock was given priority as to dividends and liens over the other class of preferred stock. Provision was made for the redemption of the stock at any dividend period, after notice, at $105.00 per share for the prior lien preferred and $120.00 per share for the preferred, the par value being $100.00. There are at pres-

cnt outstanding issues of the capital stock of the company as follows: Prior lien preferred, $700,000.00; preferred, $6,-360,054.00, and common, $6,300,034.00.

Section 408 of Article 23 of the Code, which was in force at the time of the issuance of the preferred stock, provided that any Maryland corporation having the power to issue bonds and to secure them by mortgage, or to obtain money on mortgage, might, in lieu of those methods, and in like amount, issue preferred stock and dispose of it by sale or subscription; that an agreement under seal might be executed by the corporation, to be acknowledged and recorded in the same manner as conveyances of land, guaranteeing a perpetual dividend of six per centum per annum on such preferred stock, out of the corporate profits, before any dividend should be distributed to the other stockholders; that the holders of the preferred stock should have all the incidents, rights, privileges and immunities and liabilities to which the capital stock of the corporation, or the holders thereof, might be entitled or subject; provided that no corporation should exercise any power under the section unless so authorized by a general meeting of the stockholders; and that the preferred stock should "be and constitute a lien on the franchises and property of such corporation, and have priority over any subsequently created mortgage or other encumbrance." This legislation was repealed by Chapter 240 of the Acts of 1908. As originally enacted by Chapter 471 of the Acts of 1868, it provided for the issuance of preferred stock, but did not make it a lien. This latter feature was incorporated by Chapter 474 of the Acts of 1880. While no such difficulty as the one here involved can arise as to any issue of stock since the repeal of the statute, it is apparent that the question before us is one of great importance to interests which originated under the law during the twenty-eight years it was in effect.

It appears without dispute from the evidence in the record that a sale of the lot here in question would be advan-

tageous to the company and its stockholders, and is really necessary to be made in order that the capital invested in the property may become productive. After the removal of the company's office to a more suitable location in 1903 the building upon this lot was vacant until it was destroyed in the conflagration of 1904. Since that time the lot has been for sale, as it is not available for any of the company's purposes. The offer accepted from the appellants is shown to be fair and adequate. If the sale cannot be consummated because of the lien of the preferred stock, the company must be indefinitely encumbered with an investment which is not only unprofitable but expensive; and for the same reason other unproductive properties shown by the record to be owned by the company, representing an original aggregate cost of about $200,000.00, and retained at a constant loss, must be held by it perpetually or until the entire issue of upwards of seven million dollars of preferred stock can be redeemed. It would be an anomalous situation if a lien provided for the protection of stockholders should prove such a serious embarrassment to the corporate body of which they are members and upon whose profitable operation they are dependent for the income value of their stock.

The holders of the two classes of preferred stock number more than eight hundred. Many of them are non-residents of Maryland and some reside in foreign countries. It was shown that it would be so difficult and expensive, and would cause so much delay, to bring them all into a proceeding or agreement for the discharge of the lien of the stock as to make that course entirely impracticable.

If the lien of the preferred stock were represented by a trustee duly appointed for the protection and enforcement of the rights of the stockholder lienors, or if the stock were held by a sufficiently limited number of persons to admit of their being made parties to a suit in equity, there could be no doubt, since the decision in *Baltimore City* v. *United Rys.*

*Co.,* 108 Md. 71, that upon a proper showing as to the advantage or necessity of a proposed sale of part of the corporate property in a proceeding to which the stockholders or their trustee were summoned, a decree could be obtained for the release of the property from the lien, and for the appropriation of the proceeds in such manner as to subserve the interests of those for whose benefit the security was created.

In the case cited the question was whether a lot of ground owned by the United Railways Company could be conveyed free from the lien of its income mortgage. The sale of the lot was beneficial to the company and its bondholders. There was no releasing clause in the income mortgage, although there was such a clause in a prior mortgage of the company's property. A bill had been filed by the company against the Maryland Trust Company, the trustee under the income mortgage, for the purpose of having it authorized and directed to release the mortgage as to the lot sold upon condition that the purchase money be subject to the trust of the mortgage and be applied, under the authority of the Court, to the purchase of other property which would be subject to the jurisdiction of the Court and to the lien of the income mortgage, or to the purchase of bonds which were liens on the property prior to that mortgage. The Court was also asked to retain jurisdiction of the case and thereafter authorize the trustee to execute releases of the lien of the mortgage on such property as the company might sell under the authority of the Court, when no longer needed for its railroad purposes or when its sale would be to the advantage of all parties interested. Subsequently another bill was filed by the trustee under the first mortgage, a holder of one of the first mortgage bonds and a holder of income bonds, against the railway company, the trustee under the income mortgage and a number of holders of income bonds, praying that the trustee under that mortgage be required to release the mortgaged property whenever ordered by the Court upon the petition

of the company, answer of the trustee and testimony, that
the purchase money be deposited subject to the order of the
Court in some trust company until its use for the purchase of
other property, or the reduction of the prior indebtedness, be
authorized by the Court, and that the case be consolidated
with the prior one above mentioned.   A decree was passed
for these indicated purposes; and later, upon proper petition,
answer and evidence, an order was passed authorizing and
directing the trustee under the income mortgage to release
from its lien the lot involved in the case we have cited.   In
disposing of the question whether such an order would pro-
tect the purchaser of the lot against the lien of the mortgage
the Court said: "We have no doubt about the validity of the
order, and are satisfied that the appellant can acquire title to
the property free of the lien of the mortgage to the Maryland
Trust Company, trustee, as well as of those which contain
releasing clauses."   The proceeding was sustained upon the
theory that the trustee under the income mortgage repre-
sented the bondholders for whose security the lien was cre-
ated and who were too numerous to be brought in as parties,
and that the release of the lien for the purposes of sale, when
reasonably necessary, and reinvestment or other proper appli-
cation of the proceeds, was beneficial to all the parties inter-
ested.

It is well settled, therefore, that the mere circumstance
that no provision is made for releases in the instrument cre-
ating a lien on corporate property cannot prevent a release
from being effected when it is shown to be to the advantage
of the parties and when due precautions are taken for safe-
guarding their rights.   This principle, it is clear, must be
even more readily applicable to the statutory lien under con-
sideration than to a lien created by mortgage.   The preferred
stockholder, though he holds a lien by way of special security,
is nevertheless a member of the corporation.   He has an
immediate and substantial interest in all the corporate con-

cerns. He is expressly invested with all the "incidents, rights, privileges, immunities and liabilities" of a stockholder. His dividends are payable only out of the "profits" of the company. His lien upon the corporate property and franchises does not make him a mere creditor, because the thing secured is not a debt which can ever be demanded of the corporation during its existence, but is simply and exclusively an interest in its capital stock. His relation to the corporate body is consequently much more intimate than that of the bondholder secured by its mortgage, for he is a part of the corporation itself and is a joint owner of the capital represented by the property upon which he holds his lien. If the company could under proper conditions insist, as against its mortgagees, upon a discharge of the encumbrance as to property whose disposition is necessary for the profitable management of its affairs, certainly such a right could not be denied with respect to its own members.

In the present case, therefore, if we were to hold that the property sold to the appellants could not be released from the lien of the preferred stock, that conclusion would have to be based upon the ground not that the corporation has no *right* to have it released, under the circumstances indicated in the record, but that the relief to which it is clearly entitled must be withheld merely because the parties interested in the lien are too numerous and distant to be summoned into Court.

While the general rule undoubtedly requires that all persons interested must be made parties to any proceeding by which they may be affected, yet to this rule there are well-recognized exceptions founded upon considerations of practical convenience and adopted to avoid a denial of justice. These exceptions are thus stated in *Story's Equity Pleading,* section 97: "(1) Where the question is one of a common or general interest, and one or more sue or defend for the benefit of the whole; (2) where the parties form a voluntary association for public or private purposes, and those who sue

or defend may fairly be presumed to represent the rights
and interests of the whole; (3) where the parties are very
numerous and though they have or may have separate and
distinct interests, yet it is impractical to bring them all be-
fore the Court." In discussing the exceptions the learned
author says: "It has been well observed that the general rule,
being established for the convenient administration of jus-
tice, ought not to be adhered to in cases in which, consistently
with practical convenience, it is incapable of application;
for then it would destroy the very purpose for which it was
established. The exceptions, therefore, turn upon the same
principle upon which the rule is founded. They are resolv-
able into this, either that the Court must wholly deny the
plaintiff the equitable relief to which he is entitled, or that
the relief must be granted without making other persons par-
ties." "It is obvious that under such circumstances the inter-
ests of persons not actual parties to the suit may be in some
manner affected by the decree; but the suit is nevertheless
permitted to proceed without them in order to prevent a total
failure of justice. Indeed, in most, if not in all, cases of this
sort the decree obtained upon such a bill will ordinarily be
held binding upon all other persons standing in the same
predicament, the Court taking care that sufficent persons are
before it honestly, fairly and fully to ascertain and try the
general right in contest." Secs. 96, 120.

The same doctrine was thus stated in *Wallace* v. *Adams,*
204 U. S. 425: "Now it is undoubtedly within the power of
a Court of Equity to name as defendants a few individuals
who are in fact the representatives of a large class having a
common interest or a common right,—a class too large to be
all conveniently brought into Court,—and make the decree
effective not merely upon those individuals, but also upon the
class represented by them."

In *Smith* v. *Swormstedt,* 16 How. 303, it was said:
"Where parties interested in a suit are numerous their rights

and liabilities are so subject to change and fluctuation by death or otherwise that it would not be possible, without very great inconvenience, to make all of them parties, and would oftentimes prevent the prosecution of a suit to a hearing. For convenience, therefore, and to prevent a failure of justice, a Court of Equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the Court. The legal and equitable rights and liabilities of all being before the Court by representation, and especially where the subject-matter of the suit is common to all, there can be very little danger but that the interest of all will be properly protected and maintained."

This principle was recognized in *Baltimore City* v. *United Rys. Co., supra,* where the Court said, quoting with approval from 15 *Encyc. Pl. & Pr.* 629: "The doctrine of virtual representation rests upon considerations of necessity and paramount convenience, and was adopted to prevent a failure of justice." It was given practical effect in *Diggs* v. *Fidelity and Deposit Co.,* 112 Md. 50, and in the second appeal in the same case, reported in 113 Md. under the title of *Orrick* v. *Fidelity, &c., Co.,* where it was applied to the very lien now being considered. In the first of these cases one of the questions related to the issuance of bonds for refunding purposes, after the consolidation, under the previously existing mortgage to which we have referred, and it was held that the Court below could authorize the issue after such an amendment of the proceedings as would bring before it "in person or by proper representation the holders of subsequent liens upon the property." These liens included that of the preferred stock of the consolidated corporation. In pursuance of the ruling mentioned, upon the remanding of the cause, "holders of some of both classes" of this stock were made parties for the purpose of representing that interest; and this met with the approval of this Court on the second appeal.

There are numerous authorities supporting this doctrine of representation, including *United States* v. *"Old Settlers,"* etc., 148 U. S. 480; *Crease* v. *Babcock,* 10 Met. 525; *Hale* v. *Hale,* 146 Ill. 257; *Cassidy* v. *Shimmin,* 122 Mass. 409; *Blatchford* v. *Ross,* 54 Barb. 48; *Bacon* v. *Robertson,* 18 Howard, 480; *Hamblin* v. *Toledo Co.,* 47 U. S. App. 442, 36 L. R. A. 826; *Miller's Eq. Proc.,* secs. 48-49; 15 *Encyc. Pl. and Prac.,* p. 642.

The exigencies of the case before us bring it well within the principle we have considered, and we are clearly of the opinion that the lien of the preferred stockholders is dischargeable as to any particular part of the corporate property under a decree of a Court of Equity passed in a proceeding in which fairly selected representatives of that class are made parties, and in which the reasonable necessity for a sale is alleged and proven and suitable provision is made for the protection of the lienors with reference to the appropriation of the proceeds. In such a proceeding the decree should ordinarily appoint a trustee to join in the deed to the purchaser, for the purpose of releasing the lien of the stock, and to receive the purchase money for application or reinvestment under the direction of the Court. The course of procedure adopted by the vendor corporation in the present case was to file a bill for specific performance against the vendee and to bring in as co-plaintiff the trustee under the prior mortgage and as co-defendants some of the preferred stockholders of both classes. The allegations of the bill were full and explicit as to the necessity for the sale and its advantages to the company and its stockholders, and as to the fairness of the selection of the representative defendants. After answers filed, the facts requisite for the equitable relief sought were conclusively proven. The Court below, however, had previously assumed jurisdiction of the trust under the existing mortgage on the corporate property, to which the lien of the preferred stock was subordinate, and had author-

ized the Fidelity Trust Company, the trustee under the mortgage, to join with the mortgagor corporation in conveying the lot in question to the appellants, and, therefore, in the decree from which this appeal was taken, and which required the specific performance of the contract of purchase, no provision was made for the appointment of a trustee to join in the deed or to receive the purchase money, but the proceeds of sale were directed to be paid to the Fidelity Trust Company, in the trust proceeding to which we have referred, for proper disposition under the order of the Court, this being regarded as the method by which "the interests both of the preferred stockholders and of the bondholders under the prior mortgage could be best protected and subserved." This action would appear to afford substantial protection to the appellants as against the lien of the preferred stock, and there can be no question as to the right of the trustees under the prior mortgage to receive the purchase money in the first instance, but the appointment of a trustee for the preferred stockholders to join in the deed for the purpose of releasing their lien would probably afford a more efficacious exoneration of the title. We do not regard this of sufficient importance, under all the circumstances, to require the remanding of the case; but the action indicated, if desired by the purchasers, can be taken by supplemental decree.

Independently of the principle of representation upon which we rest our decision, there have been two theories presented in the argument upon which it is suggested that the sale in question may be made free of the lien of the preferred stock. The first is that the lien is not a fixed charge upon the property of the corporation during its active existence, but is intended only to control the distribution of its assets in the event of insolvency or liquidation. We have been unable to accept this theory, in view of the absolute terms in which the statute declares that the stock "shall be and constitute a lien" upon the corporate franchises and

property, and in view of the conclusion reached by this Court in *Heller* v. *Marine Bank,* 89 Md. 622, 623, where the nature of this statutory lien was discussed and where it was held that "the so-called preferred stock is a lien on the company's franchises and property owned at the time the stock was issued," but that "it could never have been the purpose of the statute to attach the lien to the articles produced for sale, as such a lien would effectually prevent any sale and would at once, as a consequence, stop the very business which the company was organized to conduct." It was for the reason that the lien was a fixed and not a floating charge on the corporate property that it was concluded that the Legislature must have intended that "articles produced for sale" should be exempt from its operation.

The second theory suggested is that as the lien of the preferred stock is made expressly "subject and subordinate" to the first mortgage, and as this contains a provision for the sale of any of the mortgaged property by agreement of the mortgagor corporation and the trustee for the bondholders, the lien of the stock should be regarded as liable to be divested by the exercise of this right of sale, where, as here, the agreement is actually effected. In *Baltimore City* v. *United Rys. Co., supra,* the same suggestion was made in reference to the lien of the income mortgage there under consideration, which was "subject to the *provisions*" of the prior mortgage containing a releasing clause; but no opinion was expressed upon this question, as it was found not to be essential to the determination of the case. Even if we should here hold that a lien which is made simply "subject and subordinate" to a prior mortgage is in the same situation as if it were expressed to be "subject to the *provisions*" of the mortgage, we see no necessity for the determination of the question whether such a stipulation could be effective to discharge the lien of the preferred stock, as the view we have taken of this case is sufficiently comprehensive to contemplate sales of cor-

porate property clear of such a charge, where the proceedings and proof justify such action, regardless of the existence of prior liens.

The sale here involved was made on April 13, 1910, and $5,000.00 of the purchase money was paid at that time. It was agreed that the balance of the price should be paid two months later upon the conveyance of a "good and merchantable title to the vendee in fee simple." The decree below required the purchaser to pay the $45,000.00 balance of the purchase money and the costs of the suit, but interest was allowed the plaintiff only from the date of the decree, and the taxes on the property were directed to be adjusted as of the same date. The appellants urge that as these proceedings were necessary to make the title good and marketable, in view of the unusual character of the lien of the preferred stock, they should not be subjected to the costs below or on appeal, and they request also that the taxes and interest be adjusted as of the date of the decree in this Court. In our judgment, it is equitable, under the circumstances of the case that the dispositions thus proposed as to the costs, interest and taxes should be adopted, and we will decree accordingly. The decree below will be affirmed in all respects except as to the costs, and it will be modified as to the interest and taxes.

> *Decree reversed as to costs and affirmed in all other respects, with the modifications as to interest and taxes indicated in the opinion, the appellee, the Consolidated Gas Electric Light and Power Company of Baltimore, to pay the costs above and below.*