**McNARY et al. v. GUARANTY TRUST CO. OF NEW YORK.**

No. 3969.

District Court, N. D. Ohio, W. D.

Sept. 12, 1933.

On Rehearing March 27, 1934.

Tracy, Chapman & Welles, of Toledo, Ohio, for plaintiffs.

Baker, Hostetler, Sidlo & Patterson, of Cleveland, Ohio, for defendant.

HAHN, District Judge.

Three motions have been filed in the above-entitled cause: (1) Motion to transfer cause to equity docket; (2) motion of plaintiff for a judgment of default upon petition; and (3) motion of defendant for extension of time to move, plead, or demur.

The case has been docketed as a suit at law. The plaintiff is a committee acting for the protection of bondholders of first mortgage leasehold bonds of 269 Madison Ave-

aue, Inc. The latter company issued $950,-000 of bonds which have been retired to $851,000 of bonds which are still outstanding. The committee represents $673,000 of bonds, and by representation undertakes to represent the remaining $178,000 of outstanding bonds.

Generally speaking, the petition alleges that 269 Madison Avenue, Inc., was the owner of a lease for a period of 63 years on 269–271 Madison avenue in New York City; that it made a sublease of said property to the National Bank of Commerce which, by its terms, might cover the same period as the lease of 269 Madison Avenue, Inc. The sublease provided that a new and improved banking building should be erected on the premises. To secure funds for that purpose, a bond issue was placed upon the lease and the leasehold, and a mortgage and deed of trust was executed to a corporate trustee; the purpose being to apply the net rentals paid by the National Bank of Commerce to the payment and retirement of the bond issue, which was in the amount of $950,000. The National Bank of Commerce was absorbed by the defendant Guaranty Trust Company of New York. It is claimed that it wrongfully procured a release from 269 Madison Avenue, Inc., of the sublease to the National Bank of Commerce; that it brought about, or connived in bringing about, dispossess proceedings, which resulted in the termination of the 63-year lease of 269 Madison Avenue, Inc.

The facts stated are a form of "milking" which has lately received much attention from the courts. 46 Harvard Law Review, 491. The petition deals with the facts from four points of view and states four separate causes of action. The first cause of action relies upon the sublease as a contract for the benefit of a third party, to wit, the bondholders; the second cause of action alleges waste in bringing about the cancellation of the sublease and the destruction of the leasehold interest;[1] the third cause of action alleges that the parties conspired and connived to destroy the security of the bondholders; and the fourth cause of action alleges that the defendant induced a breach of the contract or contracts for the benefit of the bondholders.

Unless the second cause of action is one

for equitable waste, all of the causes of action are causes of action which ordinarily might be maintained in a court of law.

▮ The prayer of the petition is for a judgment for the full amount of the bonds still outstanding, $851,000, and for interest and costs. Although the prayer of the petition is for narrow and limited relief · [Parker State Bank v. Pennington (C. C. A. 8) 9 F.(2d) 966, 970], as will hereinafter appear, other relief is necessary for a complete determination of the controversy between the parties because of the representative character of the suit. Moreover, if full and complete relief can be had only in a court of equity, such court will administer causes of action which otherwise would ·be legal causes of action. In the much-cited case of Holland v. Challen, 110 U. S. 15, 25, 3 S. Ct. 495, 501, 28 L. Ed. 52, Mr. Justice Field said: "It is not an objection to the jurisdiction of equity that legal questions are presented for consideration which might also arise in a court of law. If the controversy be one in which a court of equity only can afford the relief prayed for, its jurisdiction is unaffected by the character of the questions involved." See, also, New Jersey, etc., Co. v. Gardner-Lacy Lumber Co. (C. C. A. 4) 178 F. 772, 780, and Wehner v. Bauer (C. C.) 160 F. 240, 242.

A part of the fourth paragraph of the first cause of action of the petition alleges: "The owners and holders of the remainder of said issued and outstanding bonds are numerous. The names and locations of many thereof are unknown to plaintiff and it is impracticable to attempt to make them parties to this action by name. Said owners and holders of the remainder of said bonds have a common interest in this action with plaintiff. This action is brought by plaintiff on its own behalf and also on behalf of the holders and/or owners of all of said issued and outstanding bonds which have not been deposited as aforesaid, (who shall participate herein or benefit in any way by virtue of this action)."[2]

The motion to transfer is based solely upon the ground that a representative suit is maintainable in the federal court only on the equity side thereof. In other words, defendant claims that in the federal courts where, because of constitutional provisions, the dis-

---

[1] Quære: As to whether or not this cause of action constitutes one for "equitable waste," see Chafee Cases on Equitable Relief against Torts, 18; Langdell, Brief Survey of Equity Jurisdiction (2d Ed.) 4.

[2] After the filing of this opinion plaintiff by consent struck out the words in parentheses.

tinctions between law and equity are rigidly adhered to, a representative or class suit can be maintained in equity only.

■ Since the ground of the motion clearly appears from the petition, it cannot be said that the motion to transfer was prematurely made.

■ No case has been called to my attention, and I have found none which holds that a representative or class suit is maintainable at law either in the state courts (before the Codes)[3] or the federal courts. Every case which has been called to my attention which deals with representative suits has been a suit upon the equity side of the court.

It has been said that no rules of common law are more rigid, technical, or inflexible than those relating to parties to actions (1 Pomeroy on Equity Jur. [4th Ed.] §§ 113 and 114), and a consideration of the limited number of actions maintainable at common law and the character of such actions would seem to lead naturally and inevitably to the conclusion that common-law actions could be pursued or defended only by parties actually in court.

■ The equity jurisdiction conferred on the District Courts of the United States by section 11 of the Judiciary Act of 1789 (1 Stat. 78), and continued by section 24 of the Judicial Code (28 USCA § 41), is that of the English Court of Chancery at the time of the separation of the two countries (Matthews v. Rodgers, 284 U. S. 521–529, 52 S. Ct. 217, 76 L. Ed. 447, 454), and state legislation cannot enlarge the equity jurisdiction of the federal courts. The jurisdiction on the law side of the federal courts, except as modified by statute, remains as it was in 1789. No statute of which I am aware has changed that jurisdiction as applied to this case. The Conformity Act (28 USCA § 724) which applies only to proceedings at law in the federal courts does not effect any change so far as this action is concerned.

Writing in 1818, Sir Thomas Plummer, M. R., traced the origin of the equitable doctrine of virtual representation as far back as 1701. Meux v. Maltby, 2 Swan's T. (Eng.) 281; Leviness v. Consolidated Gas, Electric Light & Power Co., 114 Md. 559, 80 A. 304, Ann. Cas. 1913C, page 649. This case discusses some of the federal cases which treat the doctrine of virtual representation as a creature of equity. And see an extend-

ed note appended to this case, Ann. Cas. 1913C, page 654.

Statutes enacted in the Code states, where forms of actions have been abolished and the distinctions between law and equity have to that extent been obliterated, are said to crystallize the chancery practice prior to the codes and the state courts in construing such statutes to determine whether or not they apply to different situations, consult the prior chancery practice, Pomeroy's Code Remedies, 4th Ed., pp. 384, 385; George v. Benjamin (1898) 100 Wis. 622, 76 N. W. 619, 621, 69 Am. St. Rep. 963, it being held in that case that the "statute has been construed as merely re-enacting the rules which prevailed in equity, and which might otherwise have been held to be abolished by the Code," Platt v. Colvin (1893) 50 Ohio St. 703, 36 N. E. 735; Tobin v. Portland Mills Co. (1902) 41 Or. 269, 68 P. 743, 1108, and Commonwealth v. Scott (1901) 112 Ky. 252, 65 S. W. 596, 598, 55 L. R. A. 597, which holds that the statute "recognizes and codifies this equitable practice." And see 21 C. J. 285; 47 C. J. 43, and note, 36 Harvard Law Review, 89.

■■ However, this court must follow closely the decisions of the Supreme Court of the United States and those of the Circuit Court of Appeals for the Sixth Circuit, and in this instance must determine the law from the cases of Fletcher v. Burt (C. C. A. 6, 1903) 126 F. 619, and Stearns Coal & Lumber Co. v. Van Winkle (C. C. A. 6, 1915) 221 F. 590. If the first-cited case were the only case decided by that court, it would require the granting of the motion to transfer. It may be that some of the relief asked for in that case could have been granted only by a court of equity, but the court treated the petition in that case as being "in the similitude of the common law declaration in an action of trespass on the case" (page 620 of 126 F.), and in that view of the case held that the suit, being of a representative character, was maintainable only on the equity side of the federal courts.

If the second case stood alone, its proper implications would go far to sustain the position of the plaintiff. It, however, would be presumptuous, it seems to this court, for this court, in the absence of express declaration by the higher court, to hold that it overruled the earlier case by implication without any citation or reference whatsoever to the earlier case. The point involved here was

---

[3] Quære: Would a representative action under the Ohio Code be at law or in equity? Would a judgment be reviewable by appeal or error?

not raised by counsel or discussed by the court. Counsel did not urge the point, although the report of the case shows that they considered the question of whether the case was one at law or in equity. In both the state and federal courts it was first docketed on the equity side of the court, and lastly in the federal court it was docketed on the law side (page 592 of 221 F.). It was wholly unimportant whether the case was tried on the law or equity side of the court, for, by agreement of the parties, it was tried by the court without a jury (page 592 of 221 F.). The party aggrieved by the decision of the lower court had an adequate review of the main contention upon which it sought to reverse the decision of the lower court; that contention being that plaintiffs could not maintain an action in ejectment because they were not the holders of legal title to the property involved (page 592 of 221 F.). A decision on the latter point worked complete justice to all the parties, and it would have been unusual and technical [4] had the reviewing court, on its own motion, noticed whether the action was one at law or in equity, and had made that point in any sense determinative of the case.

A question not argued by counsel has come to the mind of the court. If there should be a recovery in this action for $851,000, the total amount due on outstanding bonds, to whom would the defendant be required to pay the $178,000 of recovery to bondholders represented before the court only by representation? Would the defendant be required to pay this amount to the plaintiff committee or would it require the interposition of a court of equity to apply such payments to the proper parties to prevent a possible double recovery against the defendant? If the answer to the latter alternative is in the affirmative, does it indicate that this action must be in equity?

It is my conclusion that I am controlled by the decision of Fletcher v. Burt, supra, and that accordingly the motion to transfer must be granted. The granting of this motion makes it unnecessary to consider the other motions above referred to. Plaintiff may amend its petition, if possible, as a petition at law, or the plaintiff may reframe or recast the petition in accordance with equity rules of pleading. The plaintiff may comply with the order of the court in this respect on or before September 30th.

So far as actions at law are concerned, I have heretofore called the attention of the Bar to the doubtful validity of the practice of incorporating an entire cause of action in subsequent causes of action. It is doubtful whether section 11331 of the General Code sanctions such a practice. And see the decision of Judge Killits in Long v. Bowersox, 8 N. P. (N. S.) 249, 19 Ohio Dec. 494.

If plaintiff elects not to amend and to stand upon its present petition, an order may be entered dismissing the petition without prejudice to a new action in equity to the end that the plaintiff may have a prompt review of the present action of the court upon a short record, as in Fletcher v. Burt, supra. Exceptions are allowed to the plaintiff.

On Application for Rehearing.

The plaintiff committee has filed its application for a rehearing of the defendant's motion to transfer this cause to the equity docket; the opinion of this court having been filed on September 12, 1933.

[8] The plaintiff insists that this suit is maintainable as a representative or class suit and the defendant, by its motion to transfer this suit to the equity side of the court, acquiesces in that view. The court need not, therefore, decide whether this is a true class suit or a spurious class suit.[5]

Likewise, it is unnecessary to inquire if, had a representative or class suit not been brought by the plaintiffs, the defendant might have compelled all of the liability against it to have been litigated by a bill of peace.[6]

In my prior memorandum opinion I proceeded upon the theory that in no case could a representative action be maintained in a

---

4 Moon Motor Car Co. v. Moon (C. C. A. 8) 58 F.(2d) 90, 93, 94; Iberville, etc., Co. v. Monongahela Co. (C. C. A. 5) 168 F. 12, 17.

5 1 Street's Federal Equity Practice, p. 342, §§ 547, 548.

6 Louisville, N. A. & C. R. Co. v. Ohio Val. Improvement & Contract Co. (C. C.) 57 F. 42, 45 (Lurton, J.), affirmed Louisville, N. A. & C. R. Co. v. Louisville Trust Co., 174 U. S. 552, 19 S. Ct. 817, 43 L. Ed. 1081; Bailey et al. v. Tillinghast (C. C. A. 6) 99 F. 801; First State Bank v. Chicago, etc., R. Co. (C. C. A. 8) 63 F. (2d) 585 (Kenyon, J.); Bills of Peace with Multiple Parties, 45 Harv. L. Rev. 1297; Equity—Jurisdiction, Prevention of Multiplicity of Suits, 16 Minn. L. Rev. 679; Jurisdiction of Equity Relating to Multiplicity of Suits, 24 Yale L. J. 642; Joinder of Parties, 37 Yale L. Rev. 28; see p. 57, especially p. 62; Clark, Code Pleading, pp. 276–282; 7 C. J. 1180.

federal court in an action at law,[7] and the argument upon the rehearing has been largely to combat the court's views on that point. I am still of the opinion that in the federal courts a representative suit is maintainable only in equity. There doubtless are cases where, no objection having been made, pseudo-representative suits (of the type we have here) were maintained at law, but it seems to me that all representative suits call for the exercise of the equity jurisdiction of the court.

Representative or class suits were originally of equitable cognizance only. This was so, not only because of the rigid common-law rules as to parties (see particularly 1 Pomeroy's Eq. Jur. [4th Ed.] §§ 113 to 116; 1 Freeman on Judgments [2d Ed.] § 154), but because the machinery of a court of law was not fitted or adapted to protect the rights of unknown, unnamed, or nonparticipating parties whose rights in many instances might be finally concluded by the litigation.[8]

The reason for the rule permitting class suits is stated, and its true source is indicated, in Ashburner's Principles of Equity (2d Ed.) p. 43:

"The general rule is, that if you draw the jurisdiction out of a court of law, you must have all persons parties before this court, who will be necessary to make the determination complete and to quiet the question.

"The difficulties which arose in equity from the necessity of bringing before the court all persons who had an interest in the matter in dispute were diminished by the introduction of representative suits. At common law, a plaintiff before the Judicature Act could not sue or be sued in a representative capacity unless he were already a legal representative of another, e. g. an executor or the public officer of a bank. In equity, where there was a common interest and a common grievance, a representative suit was allowed from an early time if the relief sought was in its nature beneficial to all persons whom the plaintiff proposed to represent. The rule was not confined to persons who had a beneficial proprietary interest. Thus an administration suit might be brought by one creditor on behalf of himself and all other creditors. On the same principle, where the defendants were numerous, two or three of a class might always be made defendants to represent the interests of that class."

Story's Equity Jurisprudence, § 1981, is as follows:

"The direct and immediate parties having a legal interest are those only who can be required to be made parties in a suit at law. But courts of equity frequently require all persons who have remote and future interests * * * to be made parties. * * *

"It is the great object of courts of equity to put an end to litigation and to settle if possible in a single suit, the rights of all parties interested or affected by the subject-matter in controversy. Hence, the general rule in equity is, that all persons are to be made parties who are either legally or equitably interested in the subject-matter and result of the suit, however numerous they may be, if they are within the jurisdiction of the court, and it is, in a general sense, practicable so to do. There are exceptions to the rule and modifications of it, which form a very important part of the practical doctrines of courts of equity on the subject of pleading. But they properly belong to a distinct treatise on that particular subject."

And see Wallace v. Adams, 204 U. S. 415, 425, 27 S. Ct. 363, 51 L. Ed. 547; note entitled "Equitable Doctrine of Virtual Representation," Ann. Cas. 1913C, page 654; Calvert, Parties to Suits in Equity (2d Ed.) 21 et seq. and 43; 21 C. J. pp. 284–297, §§ 284–297; 21 C. J. p. 292, § 293.

One of the earliest cases decided by the Supreme Court of the United States, sometimes referred to as a leading case, is Smith v. Swormstedt, 16 How. 288, 14 L. Ed. 942 (1853).[9] The Supreme Court of the United

---

[7] As to the limited number of actions at common law and the character thereof, see 3 Street's Foundations of Legal Liability, pp. 99–313; Maitland, Equity and the Forms of Action, 293 et seq.; 1 C. J. 944 et seq.

[8] As to res judicata, see Adair v. New River Co., 11 Ves. 429, 443 (1805); Tosh v. West Kentucky Coal Co. (C. C. A. 6) 252 F. 44, 47, 48; 44 C. J. p. 102, § 1422; Chand on Res Judicata, 210; Commissioners v. Gellatly [1876] Ch. Div. 610; Malone v. Malone (1841) 81 Cl. & F. 179;

In re Calgary, etc., Ltd., v. Company, [1908] 2 Ch. 652; Walker v. Sur, [1914] 2 K. B. 935, and note, 34 Columbia Law Review, pp. 118, 132.

[9] During this year the distinction between actions at law and suits in equity was abolished in Ohio by adoption of the Code of Civil Procedure, 51 Ohio Laws, 57, 156, 157, March 11, 1853. The Supreme Court of the United States had recognized the jurisdiction of equity in representative suits in the earlier case of Mandeville v. Riggs, 2 Pet. 482, 7 L. Ed. 493 (1829).

States quoted from this case so late as 1921 in the case of Supreme Tribe of Ben Hur v. Cauble, 255 U. S. 356, 41 S. Ct. 338, 341, 65 L. Ed. 673, as follows: "Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation by death or otherwise, that it would not be possible, without very great inconvenience, to make all of them parties, and would oftentimes prevent the prosecution of the suit to a hearing. For convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court. The legal and equitable rights and liabilities of all being before the court by representation, and especially where the subject-matter of the suit is common to all, there can be very little danger but that the interest of all will be properly protected and maintained."

In every case which has come to my attention in which the distinctions between legal and equitable procedure were urged upon the court, representative suits were maintained in the federal courts only in equity. However, if it were true that in some case (no objection having been urged) a representative or class suit was permitted to be maintained on the law side of the federal court, that circumstance would not be determinative of this case. The question is whether this particular representative suit, considered in the light of the allegations of the petition, the character of the parties plaintiff, and the relief prayed for and which may be granted on the facts stated in the petition, may be maintained upon the law side of this court.

█ The historic distinction between law and equity has been consistently observed by the federal courts since their establishment, and, where an issue with respect thereto is directly presented, as it is by the motion to transfer, this court is bound to observe that distinction. Whatever practice may be permissible in the state courts, the distinction in the courts of the United States between actions at law and suits in equity is matter of substance and not of form. McKemy v. Supreme Lodge (C. C. A. 6) 180 F. 961, 966. See Thompson v. Central Ohio R. Co., 6 Wall. 134, 136, 137, 18 L. Ed. 765; Courtney v. Pradt (C. C. A. 6) 160 F. 561, 562; Waldo v. Wilson (C. C. A.) 231 F. 654.

█ It is often true that a particular type of case may be maintained either upon the law and the equity side of a federal court. For instance, in the cases of Turk et al. v. Illinois Central R. Co. (C. C. A. 6) 218 F. 315, cited by plaintiff's counsel, and Travelers' Ins. Co. v. Great Lakes, etc., Co. (C. C. A. 6) 184 F. 426, 36 L. R. A. (N. S.) 60, a subrogee was permitted to maintain an action at law, but it is true that such a suit must sometimes be maintained on the equity side of the court. See Ft. Worth Independent School District v. Ætna Casualty & Surety Co. (C. C. A.) 48 F. (2d) 1, 3, 77 A. L. R. 222. A suit to recover a preference by a bankrupt likewise may be in equity or at law, depending upon the facts stated in the petition or bill. See the recent case of Schoenthal v. Irving Trust Co., 287 U. S. 92, 53 S. Ct. 50, 77 L. Ed. 185. There are many other types of cases which may be maintained either at law or in equity, depending upon the facts stated in the petition or bill and the relief demanded.

In New Orleans v. Louisiana Construction Co., 129 U. S. 45, at page 46, 9 S. Ct. 223, 32 L. Ed. 607, it was said: "The rule is thoroughly settled that remedies in the courts of the United States are at common law or in equity according to the essential character of the case, uncontrolled in that particular by the practise of the state courts."

It was said in Whitehead v. Shattuck, 138 U. S. 146, 151, 11 S. Ct. 276, 277, 34 L. Ed. 873: "It would be difficult, and perhaps impossible, to state any general rule which would determine in all cases what should be deemed a suit in equity as distinguished from an action at law, for particular elements may enter into consideration which would take the matter from one court to the other;" and in Armstrong Cork Co. v. Merchants' Refrigerating Co. (C. C. A. 8) 184 F. 199, at page 204, Judge Sanborn said: "As the essential character of a cause of action and of the remedy it seeks determines whether it is a cause at law or in equity, neither the parties to it nor the court can by declaration or procedure make a cause of action at law a cause in equity, or vice versa, and when a pleading by the complainant, whether styled a petition, a declaration, or a bill, is filed with the clerk of a federal court which states any cause of action, it necessarily states one at law or one in equity, and the facts set forth in the pleading and the remedy sought thereby determine whether the cause of action pleaded is at law or in equity, and whether the pleading filed invokes the jurisdiction of the court at law or in equity."

It is necessary, therefore, in determining

whether this is an action at law or a suit in equity to have in mind what "particular elements" are involved, the character of the parties plaintiff, and the "essential character" of the relief to which plaintiffs may be entitled upon the facts alleged in the petition.

A consideration of the insurmountable difficulties with which a court of law would be confronted in this particular litigation and the facility with which a court of equity can fully and finally determine the rights of the parties to this litigation in a single suit still convinces me that this suit is maintainable in equity only.

 On its law side, this court has power to enter only a judgment in favor of the named plaintiffs to this action, and that judgment would be enforceable only by execution through the ministerial officers of this court. It has been well said: "In an action at law a general and unqualified judgment only can be given for the plaintiff or for the defendant, without any adaptation of it to particular circumstances; but courts of equity can adapt their decrees to all the varieties of circumstances which may arise, and adjust them to all the particular rights of all the parties in interest." Eaton on Equity (2d Ed.) p. 14. See, also, Langdell, Summary of Equity Pleading (2d Ed.) p. 32; 1 Freeman on Judgments (4th Ed.) § 2; Lindsay v. First National Bank, 156 U. S. 485, 493, 494, 15 S. Ct. 472, 39 L. Ed. 505.

A law court could not enter judgment for unknown and unnamed parties, and, if it attempted to do so, that judgment would be unenforceable otherwise than by a further proceeding upon the equity side of the court. A court of law has no incidental or ancillary jurisdiction to determine the parties entitled to the benefit of such a judgment, nor to make distribution to such parties. McKemy v. Supreme Lodge (C. C. A. 6) 180 F. 961; U. S. v. Wells (D. C.) 203 F. 146, at page 148; Illinois Surety Co. v. U. S. (C. C. A. 7) 226 F. 665, 669. And it is not enough to sustain the jurisdiction at law, it seems to me, to say that the court should proceed to a judgment at law in favor of unknown and unnamed parties and then proceed in a separate suit in equity for the purpose of enforcing that judgment, as was intimated in Stearns Coal & Lumber Co. v. Van Winkle (C. C. A. 6) 221 F. 590, 596. Such a procedure would require this action at law and a subsequent suit or multiplicity of suits in equity, and a controlling reason for the taking of jurisdiction by courts of equity in representative or class suits is to avoid such a multiplicity of suits. If it is necessary to bring a second suit in equity, then also it is clear that the remedy at law is inadequate. See 2 Honnold (Supreme Court Law) p. 901 (2). Further, a court of equity takes jurisdiction in order to protect the parties against further litigation. 41 C. J. 198, note 86; Mr. Justice Story, in West v. Randall, 29 Fed. Cas. at page 721, No. 17424, 2 Mason, 181 (1820).

 All of the rights of all of the plaintiffs can be adjudicated in the present action as a suit in equity. If there be a finding that all of the plaintiffs are entitled to recover, or if a part only of the plaintiffs are entitled to recover, or if there be a partial recovery only in favor of all bondholders, a court of equity will first enter an interlocutory decree in favor of the plaintiffs who are entitled to recover, as in National Tradesmen's Bank v. Wetmore, 124 N. Y. 241, 26 N. E. 548, at page 551. Upon the entering of such an interlocutory decree, the court itself, or through a master, may determine what bondholders are entitled to recover; this applying particularly to the unknown and unnamed bondholders who will be required to prove their title and ownership of bonds. Any such bondholders participating in the benefits of the decree or perhaps the fund which may be brought into court will be required to pay their equitable share of the costs and expenses of the litigation, including perhaps the payment of reasonable compensation to counsel for the plaintiffs. See Buell v. Kanawha Lumber Corp. (D. C.) 201 F. 762, 768, 769; Meeker v. Winthrop Iron Co. (C. C.) 17 F. 48; Trustees of Internal Improv. Fund v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Central R. & Banking Co. v. Pettus, 113 U. S. 116, 5 S. Ct. 387, 28 L. Ed. 915; United States v. Equitable Trust Co. of New York, 283 U. S. 738, 51 S. Ct. 639, 75 L. Ed. 1379; and note, 34 Columbia Law Review, 118, 140.

After all of these matters have been determined, the court as a court of equity has power to enter an appropriate final decree adjusting and adjudicating all of the rights of all of the parties to the litigation.

 Further, it appears to the court that pendente lite the unknown and unnamed plaintiffs in this suit in certain circumstances have a right to intervene in this litigation for their protection. See 47 C. J. 51, § 103, notes 40, 41, § 106; 61 Am. L. Rev. 22–27. The possibility that there will be any necessity or propriety for intervention in this

particular litigation is extremely remote, but it seems to the court that such right must be preserved. There may be no intervention in a federal action at law. See McKemy v. Supreme Lodge (C. C. A. 6) 180 F. 961 (1); Austin Machinery Co. v. Consolidation Coal Co. (C. C. A. 6) 67 F.(2d) 775, and U. S. v. Wells (D. C.) 203 F. 146 at page 148.[10]

It may be said in passing that so many states have adopted the Code practice that many cases can be found in the reports where the distinctions between legal and equitable remedies have been obscured or disregarded. It is to be expected, therefore, that, unless the distinction between legal and equitable remedies was strongly urged upon the court, often no note was taken thereof, and, indeed, in many of the cases the distinction between legal and equitable remedies was of no practical significance.[11] It is true that the Code practice and the liberal federal equity practice[12] as to parties has had its influence upon the law of parties in actions at law in federal courts, but not so to the extent of transforming suits in equity to actions at law in disregard of fundamental distinctions between them. Nor does the Conformity Act operate to bring about such transformation. Indeed, that act is not applied at all until it is first determined that an action at law is involved.

Congress has likewise recognized and felt itself bound by the constitutional distinction between law and equity in the federal courts. This distinction was acutely before it when it enacted the Act of March 3, 1915 (38 Stat. 956), Judicial Code, §§ 274a, 274b, and 274c (28 USCA §§ 397, 398, 399).[13]

The application for a rehearing is denied, and exceptions are allowed to the plaintiff.

[10] Quasi intervention is sometimes permitted in federal courts at law by way of motion to reclaim property (Van Norden v. Morton, 99 U. S. 378, 25 L. Ed. 453; New Orleans v. Louisiana Construction Co., 129 U. S. 45, 9 S. Ct. 223, 32 L. Ed. 607), and when a state statute permits creditors to prove claims in proceeds of property subject to attachment. Krippendorf v. Hyde, 110 U. S. 276, 4 S. Ct. 27, 28 L. Ed. 145. These exceptional cases do not affect the general rule.

[11] In Stearns Coal & Lumber Co. v. Van Winkle (C. C. A. 6) 221 F. 590, the action in ejectment might have been maintained by one tenant in common for the benefit of all either under the Kentucky statute analogous to Ohio General Code, § 11257, or under the rules of the common law. Richmond Cedar Works v. Stringfellow (D. C.) 236 F. 264, 268; Gilchrist v. Middleton, 107 N. C. 663, 12 S. E. 85; Horner v. Ellis, 75 Kan. 675, 90 P. 275, 121 Am. St. Rep. 446; Spencer v. Pierce, 172 Ark. 108, 287 S. W. 1019; 19 C. J. 1038. Moreover, so far as the reports of the cases disclose, neither the Stearns case nor Penny v. Central Coal & Coke Co. (C. C. A. 8) 138 F. 769, required the distribution of a fund or moneys obtained as damages, or the assessment of costs and expenses of litigation.

[12] This influence was noted by Mr. Chief Justice Taft in United Mine Workers v. Coronado Coal Co., 259 U. S. 344, at page 387, 42 S. Ct. 570, 575, 66 L. Ed. 975, 27 A. L. R. 762, when he said: "Equitable procedure adapting itself to modern needs has grown to recognize the need of representation by one person of many, too numerous to sue or to be sued; * * * and this has had its influence upon the law side of litigation." It is to be observed, however, that he regarded a representative suit as one involving equitable procedure.

[13] See statement of Mr. Dupre of the Committee on the Judiciary, 63d Congress, Second Session, House of Representatives Report, 162, Part 2, and an article prepared by Dean Roscoe Pound at the suggestion of a committee of the American Bar Association, "Law and Equity in the Federal Courts—Abolishing the Distinction and other Forms," 73 Central Law Journal, 204. It was said that the earlier cases, announcing the distinction between law and equity in the federal courts, were in the nature of dicta; this cannot be said of the later cases.