## McCLELLAND-GENTRY MOTOR CO. v. MEYER.

No. 12315—Opinion Filed Nov. 6, 1923.

Rehearing Denied Jan. 15, 1924.

1. **Work and Labor — Repairs on Automobile — Right to Inspect Before Payment.**

Under a contract to repair an automobile and make the same to operate in a satisfactory manner, and that a defective condition in the engine or motor thereof should be remedied and satisfactorily repaired and adjusted, the owner under such an agreement would have the right to make a reasonable, adequate examination and inspection of the car before accepting it.

2. **Appeal and Error — Questions of Fact — Verdict.**

Where the evidence reasonably supports the verdict, and the verdict is approved by the trial court, this court will not disturb such verdict, notwithstanding the evidence in the case is in irreconcilable conflict.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; A. C. Brewster, Assigned Judge.

Action by W. S. Meyer to recover one Hudson automobile, alleged to have been wrongfully detained by McClelland - Gentry Motor Company, and for damages resulting from said alleged wrongful detention. Judgment for plaintiff, and defendant appeals. Affirmed.

Lashley & Rambo, for plaintiff in error.

McGuire & Marshall, for defendant in error.

Opinion by PINKHAM, C. This was an action instituted by the defendant in error, as plaintiff, against the plaintiff in error, in the district court of Tulsa county, Okla. The parties will be referred to as they appeared in the lower court.

Plaintiff alleged in his petition that on or about the first day of May, 1920, he placed in the possession of defendant one certain Hudson automobile, with the oral agreement and understanding that the same should be repaired and made to operate in a satisfactory manner, and that a defective condition in the engine or motor thereof should be remedied and satisfactorily repair-

ed and adjusted, which work the defendant then and there agreed and undertook to do. That defendant so unskillfully and in such an incompetent manner worked on said car that the same was not repaired nor was the engine restored to running order; that said car was returned to plaintiff by defendant; that on or about the first day of June, 1920, for the purpose of making good its work thereon said car was delivered to the possession of the defendant, and that defendant has refused to deliver possession thereof to plaintiff, or to permit plaintiff to test or operate such car; and that defendant claims that plaintiff is indebted to it on account of work and labor performed on said car, but that such work was worthless and that defendant failed to repair said automobile according to the verbal promise and contract.

That defendant wrongfully and unlawfully refuses possession thereof to plaintiff; that said car is of the reasonable value of $2,000, and that reasonable value of the use thereof is $20 a day. That at the time of the delivery of said automobile to the defendant, the radiator attached thereto was in good condition, and that the defendant caused or permitted said radiator to be injured, by reason whereof plaintiff was damaged and prays damages for the value of said car, or the possession thereof, and for the usable value of said car for the period of time from the 4th day of June, 1920, to and including the 7th day of December, 1920, and for the damage of the radiator in the sum of $10.50.

To plaintiffs' petition the defendant filed an answer admitting that plaintiff left the car with the defendant under an oral agreement that defendant should repair the same; alleging that defendant adjusted and repaired said car in accordance with the said contract, and put the same in good running order; that on June 4, 1920, defendant requested the payment of the sum of $183.65 as a condition of the delivery to plaintiff of said car. That plaintiff wholly refused to make payment and has failed and still refuses to pay for same; that it has a lien on said car for the amount due defendant, and for the further sum of $119.25 for storage charges from June 20, 1920, to December 7, 1920: and that the defendant is entitled to the possession of said car until the total amount of $320.90 is paid to defendant. That on June __, 1920, defendant filed with the court clerk of Tulsa county, Okla., a lien statement against said automobile, and asks that plaintiff take nothing; and that defendant be adjudged to have a first and prior

lien against said car and be entitled to the possession thereof, and for its costs.

To this answer and cross-petition plaintiff filed his reply denying each and every allegation therein contained.

Defendant prayed judgment against plaintiff for the amount of its alleged account and for foreclosure of its lien and for an attorney's fee.

Upon these issues the case was submitted to the jury and resulted in a verdict for the plaintiff for the possession of the automobile, finding its value to be $1,500, and for $500 damages for detention of the car.

Thereafter judgment was duly rendered upon said verdict, to which judgment and verdict the defendant excepted and duly filed its motion for new trial. Said motion for new trial was thereafter overruled by the court, and appeal of said cause was taken by said defendant to this court.

A number of assignments of error are set out both in the motion for new trial and in the petition in error.

Counsel for plaintiff in error say in their brief that:

"For the purpose of our argument herein, we believe that said argument may be condensed under the single specification, that the verdict of the jury and the judgment of the court thereon is contrary to the law and the evidence."

Counsel for defendant in their brief contend that in the trial of this cause no evidence whatever was offered which could directly or by implication be construed as showing that the terms of the agreement entered into between plaintiff and defendant for the repairing of plaintiff's car by defendant and the placing of it in satisfactory running order had not been complied with by defendant, but rather that the evidence is "unanimous" in showing that defendant had complied in all respects with the terms of said contract, and that the car was in good running order at the time this action was commenced.

Counsel for plaintiff in error do not question the well-settled rule announced by this court that:

"When the evidence reasonably supports the verdict and the verdict is approved by the trial court, this court will not disturb such verdict, notwithstanding the evidence in the case is in irreconcilable conflict. Harwell, King Co. v. Duncan Bros., 80 Okla. 74, 194 Pac. 115."

However, it is pointed out that where there is an entire lack of testimony on a

given proposition involved in the trial of a case, which is decisive of its defense to plaintiff's action, such question should not be submitted to the jury, and its verdict in such case should be set aside as not supported by the evidence.

This proposition finds ample support in the decisions of this court, a number of which are cited in defendant's brief, and the important question to be determined here, as we view this case, as it is disclosed by the record, is, Does the evidence reasonably support the verdict? If it does not, the judgment should not be allowed to stand; and if it does, although there may be a conflict in the testimony, the judgment should not be disturbed, in which event other questions ably and interestingly discussed in the briefs of both parties need not be considered.

So far as the contract between the parties is concerned, there is no substantial dispute; as plaintiff says in his brief, the petition alleges, the answer admits, and the plaintiff testified that defendant covenanted to repair the plaintiff's automobile in such a manner that certain defects in the operation thereof should be remedied and adjusted by the defendant.

It we were confined to a consideration only of the defendant's testimony, the contention that the verdict of the jury is not supported by the evidence would be well taken, but the jury had before it the testimony on behalf of the plaintiff as well as the testimony of the defendant; and, from a consideration of all the testimony introduced in the case, the question arises, Does it appear that the defendant fully performed the things required of it under its agreement with the plaintiff for the repairing of said car?

Counsel for defendant say in their brief that in examining the testimony care should be taken not to confound the condition of the car as it existed on or about June 4, 1920, with its condition prior to that date and during the time the original adjustments referred to were being made.

It appears that on or about May 4, 1920, the plaintiff took the car in question to the defendant's establishment and there discussed with Mr. York, the head mechanic and service manager of the defendant, the matter of remedying "oil pumping" in cylinders one and six of the motor. The difficulty seemed to be that those two cylinders "pumped oil," which fouled the spark plugs and prevented ignition of the gas in those two cylinders, which caused the car to jerk and jump when running. Plaintiff testified that:

"Mr. York told me by having new rings placed on No. one (1) and No. six (6), it would stop that pumping oil and that he felt I should have them while they had it down, putting rings on would not take much more time and that would absolutely stop the pumping of oil, and it would put it in absolute shape; I would not have any more trouble with it at all. He would suggest that I have rings put on each one of the pistons, which I agreed to have done, if it would put it in first class shape as he said it would."

It appears that after considerable delay the plaintiff got the car on May 18th, and that according to the plaintiff's testimony it was at that time represented to be in first class condition by the service manager of the defendant company; on the following morning the defendant sent a statement covering the work done on the car to plaintiff's office, amounting to $149.60.

There is evidence which is not disputed that the difficulty was not removed, and that the plaintiff was obliged to return the car to defendant to have the work made good, but that in spite of numerous adjustments attempted to be made it still failed to operate any differently from the way in which it had been running prior to the time it had been worked upon by defendant's mechanics.

There is ample evidence disclosed in the record that after the car in question was first left with defendant for the purpose of repairing the same, on May 4, 1920, said car was returned on at least two different occasions because the work performed by the defendant had not obviated the trouble, and that it was again returned by plaintiff to defendant for further adjustment in that respect on June 4, 1920. It is admitted by defendant that plaintiff returned the car on two occasions prior to its return to it on June 4, but it is contended that, having made further adjustments, the car was in good running order when the plaintiff called for it the last time; that the evidence discloses that fact, and that as the plaintiff refused to pay the charges for work and labor performed, therefore the verdict of the jury should be set aside as not supported by the evidence.

There is evidence in the record that from the 4th day of May to June 4, 1920, the plaintiff had been endeavoring to have the defendant remedy the defects in the operation of his car as was agreed to be done under the oral understanding and agreement of the parties, and that he had failed to do so; that on the last occasion, June 4th, when the plaintiff was informed by defendant that the car in question was ready, he was told by one of the de-

fendant's mechanics that the car was now in good shape, and that the manager desired to see him at the office; that when the plaintiff appeared there, he was presented with the bill for the repairs. The plaintiff testified that he offered to pay the defendant $100 at the time and proposed to the manager that he would take the car, with a representative of the defendant, and test it, and if it ran ten blocks without pumping oil or fouling the spark plugs, he would pay the remainder of the bill; this proposal was refused; that he then requested that the motor be run for awhile in the shop in order that he might ascertain whether or not the car was in proper running order, which proposition was also refused.

The defendant testified that the plaintiff on the occasion of his last visit to the shop offered to pay $100 and take the car and test it, which he declined to accept, but denied that the plaintiff requested that the motor be run in the shop.

A number of defendant's employes testified to the effect that the car in question was in good running order at the time plaintiff called for it on June 4th. There is also evidence disclosed in the record that when the car was afterward taken into possession by the sheriff on the replevin writ in this case, an effort was made to drive it on its own power, but that it would not run, and there is also evidence to the effect that a mechanic employed in the garage where defendant stored the car in question after it had detained possession of it on June 4th, that one of defendant's employes came over to the garage where the car was stored and could not get it to run and was obliged to tow it away. This was after the last adjustment work had been put upon the car by the defendant on June 4th.

There was testimony on behalf of the defendant that the reason the car in question would not run at the time the sheriff attempted to drive it was that the needle points of and to the car had been removed, and that as a consequence the car would not be operated.

In view of the admitted facts that from May 4, 1920, to June 4, 1920, plaintiff had returned the car in question to the defendant to remedy the condition which caused it to "pump oil," the demand of plaintiff that he be permitted to test the car before paying the entire bill for the repairs was not an unreasonable one. Certainly his experience had been such on account of the repeated failures of defendant to remedy the defects in the operation of the car as to justify his request in that regard. We think the plaintiff, in view of the facts and circumstances disclosed in the record, was clearly entitled to make a reasonably adequate examination. Kekae v. Newman, 169 N. Y. Supp. 71.

"Under a contract to put an automobile in 'good running condition,' putting it in 'fair condition' was not a performance. The owner, under such agreement, would have the right to inspect the car after it was repaired, before accepting it." Berry on Automobiles (3d Ed.) section 1342.

The refusal of the defendant to permit a reasonable test to be made by the owner in order to determine whether or not the contract had been complied with by the defendant, entitled the plaintiff, in view of the facts and circumstances disclosed in the record of this case, to maintain an action for the possession of the car without first paying or offering to pay the charges claimed by the defendant to be due it for work performed in repairing the car.

Defendant bases its right to retain possession of the car in question until all the charges were paid by virtue of the provisions of the act of 1913, chapter 82, page 132, Session Laws 1913. Numerous authorities are cited by both plaintiff and defendant in their respective briefs as to the meaning of this statute, with reference to the right of a lienor to possession of the personal property involved. It is sufficient to say that we find no language in the act of 1913, supra, giving to a lienor the right to detain possession of personal property, upon which the lien is asserted.

"It is incumbent upon the workmen to do the work in accordance with the contract by which it is undertaken. If the contract is not written, there are certain implied obligations that apply to every undertaking, and so it may be said that in every case the workman is bound to do the work reasonably well, that is, in a workmanlike manner, using such skill and judgment as the undertaking requires, and such as the workman claims to possess; producing the result of the undertaking within the time stipulated without waste or damage to the employer; using the material furnished in a proper manner, and withal exercising good faith in the performance of the work. If therefore, the work has not been so performed, if the contract has not been kept, but by reason of the performance thereof on the part of the bailee a defense is afforded to the employer against a demand for the payment of the price, that the work was defectively or improperly done, that same defense will be equally available to the employer after the loss. Judge Story says, 'This seems to be the doctrine of the Roman law, and it is also the doctrine of the common law." Babbitt on the Law Ap-

plied to Motor Vehicles (3rd Ed.) sec. 766, citing Van Zile on Bailments, etc. (2nd Ed.) sec. 143.

Whether or not the car in question was repaired in compliance with the agreement entered into by the parties, and whether or not the same was in good condition and running order at the time plaintiff demanded the right to test it before paying the entire bill for such repairs, were questions of fact duly submitted under proper instructions of the court to the jury.

The evidence was conflicting in some particulars as it ordinarily is in cases of this character, but when the jury has been properly instructed, and its verdict approved by the trial court, the same will not be set aside in this court if there is any evidence reasonably tending to support it. Poos v. Kelly, 79 Okla. 118, 191 Pac. 600.

This court will not disturb such a verdict notwithstanding the evidence in the case is in irreconcilable conflict. Harwell Co. v. Duncan Bros., 80 Okla. 74, 194 Pac. 115.

The issue in this case was whether the agreement between the parties as to the repair of this automobile had or had not been complied with, plaintiff contending that the work performed by defendant was valueless; that he was entitled to the possession of his car and for damages for the loss of the use of same; the defendant contended that it had fully complied with the contract and that it was entitled to recover the amount of its charges and an additional amount for storage of the car. That issue was squarely submitted to the jury and it decided that issue in favor of the plaintiff and against the defendant. In view of this situation, which is shown by the record, the further contention of defendant, that even if the charges of defendant for the repairs were worthless to plaintiff, he would be entitled to a lien and to the possession of said car until said charges were paid, after which, in case said repairs were worthless, plaintiff could sue to recover such payment, cannot be sustained.

The verdict of the jury involved a finding that there was no indebtedness due the defendant on account of its failure to remedy the defects in the operation of the car, which it had contracted to do, and that the work it had done on said car was valueless to plaintiff.

After a careful examination of the record in this case, and of the briefs of plaintiff and defendant, we think the judgment of the trial court should be affirmed.

On appeal to this court from a judgment of the district court of Tulsa county, Okla., supersedeas bond was filed, executed by the defendant McClelland - Gentry Motor Company, as principal, and National Surety Company, as surety, to stay execution of said judgment; and the plaintiff has asked this court in his brief to render judgment in his behalf on the supersedeas bond herein given as by the rules of this court provided. The judgment of the trial court was rendered on 9th day of December, 1920, for the return and possession of said automobile from defendant, or in the alternative, the payment of $1,500, being the value of said automobile, and in addition that the plaintiff have and recover from defendant herein the sum of $500, being the rental or usable value of said automobile during the time defendant has been in possession thereof, and for the costs of this action; the said supersedeas bond provides that the said McClelland - Gentry Motor Company shall deliver possession of said automobile to plaintiff, or in the alternative pay to said plaintiff $1,500, and that defendant further pay plaintiff the additional sum of $500, together with all costs. Judgment therefore will be entered in this court against the defendant and the surety on said appeal bond for the return of said car to plaintiff, or in the alternative $1,500, the value thereof, and in addition thereto the sum of $500, together with all costs.

By the Court: It is so ordered.