SPENCER *v.* PIERCE.

## Opinion delivered November 15, 1926.

1. EVIDENCE—PAROL CONTRADICTING WRITING.—A witness will not be permitted by parol evidence to contradict his own deed.

2. EVIDENCE—SECONDARY EVIDENCE.—A witness will not be permitted to testify as to the contents of a deed not produced, where it is not shown to have been lost or destroyed or that it could not be produced.

3. EVIDENCE—HEARSAY.—Testimony of a witness as to what his uncle told him concerning a certain conveyance *held* hearsay and inadmissible in a suit to recover possession of the land.

4. EJECTMENT—COMMON SOURCE OF TITLE.—Where the parties to ejectment claim from a common source, it is unnecessary for the plaintiffs to trace their title beyond such common source.

5. EJECTMENT—COMMON SOURCE OF TITLE.—Where the parties to ejectment claim from a common source, plaintiffs are entitled to recover if they prove the better title from the common source.

6. EJECTMENT—COMMON SOURCE OF TITLE.—Plaintiffs in ejectment *held,* under the evidence, to have established the better title to the land from the common source, and to be entitled to judgment for possession and damages.

7. TENANCY IN COMMON—RIGHT OF ACTION.—Plaintiffs, entitled to recover a half interest in land, may maintain an action against defendants wrongfully in possession, which inures to the benefit of their cotenants.

Appeal from Baxter Chancery Court; *Lyman F. Reeder,* Chancellor; reversed.

*H. J. Denton,* for appellant.

WOOD, J. This is an action by the plaintiffs below, appellants here, against the defendants below, appellees here, to recover the possession of all that part of the northwest fractional quarter of section 11 in township 18 north, range 12 west, lying north and east of what is known as Dry Branch. The appellants alleged that they were the owners of the land and other lands adjoining the same. They deraigned title from the Government by mesne conveyances from the patentee of the land, J. H. Wolf, to J. L. Spencer, and by the last will and testament of Spencer to the appellants. They alleged that the appellees were in unlawful possession

of the land in controversy, and had been, to appellants' damage in the sum of $1,000. They prayed judgment for possession and damages, and that their title be "established, quieted and confirmed."

The appellees answered denying the material allegations of the complaint, and deraigned title from J. H. Wolf through mesne conveyances to them. The appellees alleged title by adverse possession of the lands for a period of more than twenty years. They also alleged that appellees' predecessors in title and the appellants' predecessors had only an undivided interest in the lands; that the lands had been divided between them by deed, which was lost; that the appellants and appellees therefore elected to take a certain agreed line as set out in the deeds, which gave to the appellees the lands claimed by the appellants in this action. They prayed that the appellees' title to the lands be "established, quieted and confirmed." The cause was begun in the law court and was, without objection, transferred to the chancery court. It was conceded by counsel for the appellees in the court below that the Government survey and plat of the land in question would take the land from the appellees. The appellees claimed the land in controversy by adverse possession under lines which they alleged had been agreed upon by the predecessors in title of the appellants and the appellees.

The testimony on behalf of the appellants tended to prove that, by agreement between F. F. Pierce, the predecessor in title of the appellees, and Guy W. Spencer, representing himself and the other appellants, a survey of the lands was made to locate the section line between sections 2 and 11. Guy Spencer testified on behalf of the appellants, in substance, that the appellants acquired title to the lands in controversy by purchase and warranty deed to the northwest fractional quarter of section 11, township 18 north, range 12 west, Baxter County, Arkansas, and that F. F. Pierce, predecessor in title of the appellees, acquired title by purchase to part of section 2, township 18 north, range 12 west, adjoining

the land of appellants. After the death of witness' father, witness entered into an agreement with F. F. Pierce to have the dividing line legally surveyed. This was in the fall of 1919, in F. F. Pierce's store in Norfolk, in the presence of Dick Martin and J. N. Ware. Pierce accused the witness of cutting some of his timber. Witness agreed to have the survey made to establish the line between them, and Pierce agreed to pay half the expense and to abide by the result of the survey. Pierce refused to abide by the survey, and he held possession of the lands in dispute about nine years, and the land is worth seven dollars per acre. The appellants had paid taxes on the land in controversy. The appellees had not paid the taxes on any part of this land. Pierce's renter cultivated the land on both sides of Dry Branch in 1922 and 1923.

The testimony of a surveyor shows that there were nine acres of land in section 11, township 18, range 12 north, and east of Dry Branch. Witnesses Martin and Ware corroborated the testimony of Guy Spencer to the effect that F. F. Pierce and Guy Spencer agreed to have a survey made so as to establish the line between their lands. Ware testified that Pierce and Spencer were willing to have the survey made and to abide by it. The survey was made, and Spencer got about eight acres off Pierce's land, worth from fifty to sixty dollars per acre, and Pierce got three acres off of Spencer's land. Pierce and his estate had been in possession of the land for about eight years, and the Spencers had been in possession of and cultivating for the past eight years that part of the southeast quarter of section 2 west of Dry Branch. Witness cultivated the land in section 11 west of Dry Branch claimed by Spencer, but did not tend the land west of Dry Branch, in the southeast quarter of the southwest quarter of section 2, township 18, range 12, because Spencer told witness to leave that out— that they did not claim it after the survey was run. Spencer was cutting some cedar timber a half mile west of Dry Branch, on a line between the Spencer place and

the Bud Jones place, owned by Pierce. The dispute over the line between Pierce and Spencer arose about the cutting of this cedar.

The testimony on behalf of the appellants shows that Pierce was with the surveyors and Guy Spencer at the time the survey was being made. Will Bryant, a witness on behalf of the appellees, testified that he moved on the land in controversy in 1901. Three years of the time T. J. Baker owned it, and then J. L. Spencer bought it, and witness stayed one year after that. He cultivated the land afterward owned by J. L. Spencer, and did not cultivate any land east of Dry Branch. Jake Wolf owned that land. He sold it to J. H. Caldwell, and Caldwell had the land east of Dry Branch cultivated. Witness showed J. L. Spencer the line when he bought the land. He did not show him any land east of Dry Branch. Jeff Baker had witness put in a fence on Dry Branch, and later another fence was put on the other side. Two fences divided the two farms. Baker told witness that the creek was the line between them. At the time witness showed Spencer the line, witness had no description of the land to go by. Witness cultivated a part of the land in section 2 west of Dry Branch on the Spencer farm. Lewis and Caldwell did not cultivate any land in section 2 west of Dry Branch while witness was over there.

S. C. Pierce testified that he was the administrator of the estate of F. F. Pierce, and had charge of the lands belonging to the Pierce estate in the northwest fractional quarter of section 11 east of Dry Branch. He had not authorized any one to cultivate lands west of Dry Branch, in the southeast quarter of the southwest quarter of section 2.

Over the objections of the appellants, J. H. Wolf was permitted to testify that he sold to T. J. Baker, in 1899, that part of the northwest fractional quarter of section 11, township 18, range 12 west of Dry Branch, and pointed out Dry Branch as the line. Witness retained possession of the land east of Dry Branch and

exercised the right of ownership over it for three years thereafter. Witness sold the lands in controversy to James Caldwell in 1902, and pointed out to him, among other lands, all that part of the northwest fractional quarter of section 11, township 18, range 12 west, east of Dry Branch, and put him in possession. Witness remembered seeing a deed for part of section 2 from L. J. Wolf to M. J. Wolf, in which Dry Branch was made the line. Witness' uncle told witness that Dry Branch was the line between the lands conveyed to T. J. Baker and J. H. Caldwell. Dry Branch was not mentioned in the deed to T. J. Baker as the line. Witness told him that Dry Branch was the line.

Witness Schoggin testified that he saw a deed from Wolf to T. J. Baker conveying the northwest fractional quarter in section 11, and other lands. The deed did not mention Dry Branch as the line. It conveyed the northwest fractional quarter in full and without any reservation. There was never a legal survey of the land between the Spencer and Pierce lands up to the time of the institution of this suit. Theo Bryant testified that he was familiar with the lands in controversy. Pierce was in possession of it when he first knew it. During the eight years that witness knew the lands and cultivated part of them, no legal survey was made of the lines.

It was shown that the deed from Baker to (Rance) J. L. Spencer calls for an undivided half interest of the lands in controversy.

The trial court found that the appellants failed to show a record title, and entered a decree dismissing the appellants' complaint for want of equity, from which is this appeal.

1. The testimony of J. H. Wolf, to the effect that he sold that part of the northwest fractional quarter of section 11, township 18 north, range 12 west, lying west of Dry Branch to T. J. Baker, is incompetent and cannot be considered. Likewise, his testimony to the effect that, in 1902, he sold the land in controversy to James Caldwell

and pointed out to him all that part of the northwest fractional quarter of section 11, township 18 north, range 12 west, east of Dry Branch, and put him in possession thereof, is incompetent and cannot be considered. This testimony tended to contradict the deed from Wolf to T. J. Baker, which does not mention Dry Branch as the dividing line between the land conveyed to Baker and the land conveyed to Caldwell. The terms of the deed are controlling. The testimony of this witness to the effect that he saw a deed from his uncle, Jake Wolf, to M. J. Wolf in which Dry Branch was made the line, is incompetent for the reason that, if such deed was in existence, it was the best evidence. It was not shown that this deed was lost or destroyed, nor that it could not be produced. The testimony of this witness that his uncle, M. J. Wolf, told witness that this Dry Branch was the line between these lands conveyed to Baker and Caldwell was pure hearsay and cannot be considered.

Since the appellants and appellees claimed from a common source, it is unnecessary for the appellants to trace their title beyond this common source. *Naill* v. *Kirby,* 162 Ark. 140, 257 S. W. 735. The appellants therefore are entitled to recover if they have proved a better title to the lands in controversy from J. H. Wolf than the title of the appellees through the same source. 19 C. J., p. 1061, § 39 (8).

The appellants adduced in evidence a deed from J. H. Wolf to T. J. Baker in which Wolf conveyed to Baker an undivided half interest in the northwest fractional quarter of section 11, township 19 north, range 12 west, and a deed from T. J. Baker to J. L. Spencer conveying the same lands, and the will of J. L. Spencer devising these same lands to the appellants. While the appellees assert that there has been a complete chain of title from J. H. Wolf to the land in controversy, they fail to show a record title from J. H. Wolf through mesne conveyances to F. F. Pierce, under whom they claim. Appellees exhibit no mesne conveyances in which lands embracing the lands in controversy are described con-

veying title from J. H. Wolf to F. F. Pierce under whom appellees claim. The appellants therefore have shown a superior title to that of the appellees.

But the appellees also claim title by adverse possession. A preponderance of the testimony tends to prove that there was a dispute between F. F. Pierce and Guy Spencer concerning the boundary between their adjoining lands and that they entered into an agreement to have a survey made to determine the true boundary line between them. According to the boundary line established by this survey, the lands in controversy were included in the northwest fractional quarter of section 11, township 18 north, range 12 west, described in the deed from Wolf to Baker and from Baker to Spencer. The land in controversy was not wild land, and the proof is not sufficient to show that the appellees had been in adverse possession thereof under color of title for seven years. The appellees therefore were trespassers, and the appellants are entitled to judgment against them for possession and for whatever damages they have sustained at the hands of the appellees. See *White* v. *Cotton,* 131 Ark. 273-282, 199 S. W. 116.

2. The appellants are entitled to recover an undivided one-half interest in the lands in controversy, and this right of possession and for damages in the appellants enables them to maintain the action against the appellees, which inures also to the benefit of the owners of the other undivided half interest. One tenant in common may maintain an action for the recovery of real property against a third person and trespasser which will inure to the benefit of all his cotenants. 2 Thompson on Real Property, § 1893, and cases cited in note 31. See also *Newman* v. *Bank of Cal.,* 80 Cal. 368, 222 P. 261; *Hooper* v. *Bankhead,* 171 Ala. 626, 54 So. 549; *Winborne* v. *Lbr. Co.,* 131 N. C. 32, 40 S. E. 825; *Mitchell* v. *Mitchell,* 80 Tex. 101, 15 S. W. 705; 19 C. J. 1038; 38 C. J. 12, subdivision III, B, and other authorities cited in brief of counsel for the appellant.* See also *Burgett* v. *Williford,* 56 Ark. 187-192, 35 S. W. 96.

The judgment is reversed, and the cause is remanded with directions to the trial court to enter a decree in favor of the appellants against the appellees for the possession of the property, and for further proof, if the parties so elect, as to the amount of appellant's damages. It appears to us that that feature of the case is not fully developed.

* The following additional authorities are cited by appellant's counsel: *Keith* v. *Keith,* 39 Tex. Civ. App. 363; *Allen* v. *Gibson,* 4 Rand. 468; *LeCroix* v. *Malone,* 157 Ala. 434, 47 So. 725; *Blakely* v. *Du Bose,* 167 Ala. 627, 52 So. 746; *Simmons* v. *Spratt,* 26 Ala. 499, 8 So. 123; *King* v. *Hyatt,* 51 Kan. 504, 32 Pac. 1105; *Horner* v. *Ellis,* 75 Kan. 675, 90 Pac. 275; *King* v. *Bullock,* 9 Dana (Ky.) 41; *Compton* v. *Matthews,* 3 La. 128; *Hutchins* v. *Bacon,* 46 Tex. 408; *Read* v. *Allen,* 56 Tex. 176; *Sowers* v. *Peterson,* 59 Tex. 216; *Moore* v. *Stewart,* 7 S. W., 771; *Thomas* v. *Jones,* 97 N. C. 121, 1 S. E. 693; *Hardy* v. *Johnson,* 1 Wall. 371; *Foster* v. *Hackett,* 112 N. C. 546, 17 S. E. 426. (Reporter).