PERRY *v.* RYE.

5-392                                    267 S. W. 2d 507

Opinion delivered May 3, 1954.

*P. E. Dobbs,* for appellant.

*Clayton Farrar,* for appellee.

ED. F. McFADDIN, Justice. This is a suit instituted by the appellee to recover a tract of land in the City of Hot Springs. From a decree in favor of the plaintiff for the land and for $1,076.67 damages, the defendant prosecutes this appeal. We will refer to the parties as they were styled in the Trial Court.

I. *Title of Plaintiff.* The cause was filed as an action in ejectment, and transferred to equity on motion of the defendant. The plaintiff both alleged and proved the following:

(a)   that the Lot 8 here involved was owned by Sam Rye, who died in 1921;

(b)   that this Lot 8 was devised in the residuary clause of the will to Sam Rye's four children, of whom plaintiff was one;

(c)   that Elsie Rye, widow of Sam Rye, not being named in the will, took dower in his estate as provided by Statute;

(d)   that this Lot 8 was assigned to the widow, Elsie Rye, for her life[1] by proper order of the Probate Court in 1923;

(e)   that on September 3, 1926, Elsie Rye executed a Special Warranty Deed to J. H. Floyd, describing the property: ". . . all my right, title and interest in and to Lot 8" (further described by block and addition, etc.), "said property having been assigned and set apart to me as dower by order of the Garland County Probate Court";

(f)   that the Executor of the Estate of J. H. Floyd executed a Special Warranty Deed to the defendant, Rutha Perry, in 1941, describing the property conveyed as ". . . all the right, title and interest of J. H. Floyd, as conveyed by Elsie Rye on September 3, 1926," (and giving the book and page number of the deed where recorded) "as follows: 'All my right, title and interest in and to Lot 8' (and giving block and addition, etc.), 'said property having been assigned and set apart to me as dower by order of the Garland County Probate Court' ";

(g)   that Elsie Rye died on July 22, 1951; and

(h)   this action was filed on September 5, 1951.

With the above facts alleged and proved, we think the plaintiff proved a sufficient title. It is true that the plaintiff did not deraign his title from the sovereignty

---

[1] The Probate Court order setting apart the said Lot 8 to the widow said: "She is hereby endowed of . . . Lot 8 . . . and is enti- t'ed during the term of her natural life to the use, rents, and profits thereof, free from the interference or claim of . . . heirs at law of said Sam Rye, deceased."

of the soil, but he did deraign it from Sam Rye, who is the common source of title of both plaintiff and defendant: since defendant claimed by limitations and by tax forfeitures occurring during the life estate of Elsie Rye. Allegation and proof of title from the common source was therefore sufficient in this situation. See *Spencer v. Pierce,* 172 Ark. 108, 287 S. W. 1019; and *Naill v. Kirby,* 162 Ark. 140, 257 S. W. 735.

The defendant apparently recognized the general rule of law that *limitations does not commence to run against the remainderman until the death of the life tenant. Ogden v. Ogden,* 60 Ark. 70, 28 S. W. 796, 46 Am. St. Rep. 151; *Kennedy v. Burns,* 140 Ark. 367, 215 S. W. 618; and *Frazier v. Hanes,* 220 Ark. 765, 249 S. W. 2d 842.

II. *Betterments.* After receiving the aforementioned deed from the Executor of the J. H. Floyd Estate in 1941, defendant placed portions of four houses on the Lot 8 here involved; and defendant claims that he is entitled to the protection of our Betterment Statutes.

In an effort to bring himself within the purview of § 84-1121, Ark. Stats., as to betterments by the purchaser of a tax title, the defendant showed that the Lot 8 sold for the taxes of 1923; and that the Clerk's Tax Deed was made to Sam Smith on July 3, 1926; that Sam Smith conveyed the Lot 8 by Quitclaim Deed to Elsie Rye on August 16, 1926; and that Elsie Rye conveyed to J. H. Floyd on September 3, 1926. But it will be observed that at the time of the tax forfeiture in 1923, Elsie Rye was the life tenant; and it was her duty to pay the taxes. So when she received the Quitclaim Deed from Sam Smith, she, in effect, redeemed from the tax sale. A life tenant cannot acquire a tax title adverse to the remainderman. *Inman v. Quirey,* 128 Ark. 605, 194 S. W. 858; and *Ingram v. Seaman,* 223 Ark. 414, 267 S. W. 2d 6.

In an effort to bring himself within the purview of § 34-1423, Ark. Stats., which is our General Betterment Statute, the defendant claimed that he honestly believed that the deed from the Executor of Floyd's Estate conveyed the fee, because of defendant's own ignorance and

other extraneous matters. But all of defendant's effort in this regard fall short of complying with the Statute, which provides that the person improving the property must not only believe himself to be the owner, but must be holding "under color of title." The Deed under which the plaintiff claimed from the Estate of Floyd recited on its face that it conveyed only the life estate of Elsie Rye which she had conveyed to J. H. Floyd. A deed conveying only life estate is not sufficient "color of title" to bring the grantee under the benefit of the Betterment Statute: see *Graves* v. *Bean,* 200 Ark. 863, 141 S. W. 2d 50. Without considering the question of "honestly believing," we hold that the defendant failed to show that he held under color of title; and for that reason is prevented from claiming under the General Betterment Statute.

III. *Defect of Parties.* It was shown that the descendant of another beneficiary under the Sam Rye will owned one-half of the remainder title, along with the plaintiff, Joe Rye. In other words, such person was a co-tenant with the plaintiff. The defendant moved that such absent co-tenant should be brought into the cause.[2] The Court overruled this motion, and the defendant claims error; but our cases hold contrary to the defendant's claims. One co-tenant can maintain an action in ejectment for the benefit of himself and his absent cotenant. *Spencer* v. *Pierce,* 172 Ark. 108, 287 S. W. 1019. The statement there contained, supported by many cited cases, is:

"One tenant in common may maintain an action for the recovery of real property against a third person and trespasser, which will inure to the benefit of all his cotenants."

So plaintiff had a right to maintain this case. It is always the better practice when the name of the absent

---

[2] The said Motion read in part: "That evidence adduced heretofore in proceedings in this matter reveal that there are two legal heirs of Sam Rye, Deceased, the plaintiff herein and Ada Rye Frizby; that in order to adjudicate this matter as to all parties it is necessary that the said Ada Rye Frizby, heir at law of Sam Rye, Deceased, be made a party plaintiff to this cause of action."

co-tenant has been shown—as here—that such absent co-tenant be made a party, particularly in view of the distribution of the damages;[3] but making the absent co-tenant a party is not judicially essential to maintaining the action of ejectment. In the case at bar, the absent co-tenant may yet be made a party, in view of the directive hereinafter contained.

IV. *Damages.* The Chancery Court allowed the plaintiff (for himself and his absent co-tenant) damages in the sum of $1,076.67; and we find this to be excessive. The sum was evidently reached from the testimony of a real estate man, who testified that there were four houses on or partially on the Lot 8; and he gave the rental value of the houses as follows: $15.00 per month for each of two houses partially on Lot 8, $5.00 per month for one house entirely on Lot 8, and $7.50 per month for that portion of another house that was partially on Lot 8. Defendant, Rutha Rye, owned adjacent Lot 7, and his title to that Lot is not in controversy; and in building the four houses, he had constructed them without regard to the boundary line between Lots 7 and 8. That circumstance accounts for the fact that three of the houses were only partially on Lot 8. The witness who fixed the said rental values of the houses did not testify as to what portion of the rental of the first two houses was allocated to Lot 8. At all events, it was shown that the house that rented for $5.00 per month was vacant, through no fault of defendant. The death of Elsie Rye was July 22, 1951, and the date of the decree in this case was September 24, 1953; so the Trial Court evidently took the total of the rental of all four houses and calculated it for twenty-six months. Because only a portion of two of the houses was on Lot 8, and because one of the houses was vacant without fault of the defendant, it follows that the damages assessed against the defendant were excessive. But in view of the next section of this opinion, we are remanding for re-trial all questions of damages.

V. *Location of the Houses.* A most unusual situation was shown to exist regarding the location of the

---

[3] For a discussion on this point, see *Young* v. *Garrett*, 149 F. 2d 223.

houses on Lots 7 and 8, as mentioned in the previous Topic. The plat, which was introduced by stipulation, would *prima facie* indicate that two of the houses encroached from Lot 8 onto Lot 7, and that one of the houses encroached from Lot 7 onto Lot 8. The parties made no serious effort to present to the Trial Court the law or facts as to the disposition of the houses.[4] We think it the better practice for all the issues in an equity case to be settled in one suit. Whether justice should be accomplished by partition of the houses, by destruction of the encroaching parts, by some application of the doctrine of encroachments, or some other theory, are matters that the parties should first present at the trial level.

## CONCLUSION

Therefore, we affirm so much of the decree as awarded the plaintiff and his absent co-tenant the title to Lot 8 and denied the defendant's plea of betterments; but we remand the cause for new trial as to damages, and for a decision as to the said disposition of the buildings that are over the boundary line; and on remand, the absent co-tenant should be made a party.

---

[4] The appellant says in his brief in this Court:

"We feel that it is apparent that this matter has not been fully adjudicated since the court in reaching its decision did not make any disposition or vest title to the houses located on and partially on this property and call the attention of this Court to the stipulation and the plat. If this judgment should be allowed to stand, it appears that this matter would have to be litigated further by the institution of additional suit. We, therefore, submit that this Court or the court below should make a decision on this point."

In answer to the above argument, the appellee says:

"Appellee can find no case where a similar situation existed and was adjudicated. Appellants informed appellee just prior to the entry of judgment that the case would be appealed if an adverse ruling was made. Thereupon appellee concluded the appellate court would direct the proper procedure to be followed in partitioning the improvements."